The registry of births and deaths, kept by a religious society, is evidence; but it must be proved at common law. A copy under the seal of the corporation, is not evidence.

A recital in a deed, that certain land had become *the property* of *D,* is evidence against the grantor (though not conclusive) that *D* had a fee simple in the land; and if the deed further recites, that *D's* estate had been divested by an entry of the grantor for breach of condition, one who claims under *D* (but not under the deed) is not estopped from denying this recital, by having availed himself of the first as evidence of *D's* estate.

It is matter of law what circumstances will justify the presumption of a deed, and it is the court's duty to give an opinion, whether the facts proved will justify the presumption.

Evidence of a *custom* in a particular place to enter for breach of a condition in a ground rent deed in a manner different from that authorized by the rules of the common law, or the terms of the deed, is inadmissible.

It is no objection to a conveyance of land in *Pennsylvania,* that the grantor was *out* of possession at the time.

## STOEVER *against* The Lessee of WHITMAN.

### IN ERROR.

THIS was a writ of error to the Common Pleas of *Dauphin* county.

In the lower Court it was an ejectment by the lessee of *Whitman,* to recover the possession of 12 acres 26 perches of land in the town of *Lebanon,* for a part of which a verdict and judgment were obtained by him; but in the course of the trial bills of exceptions were taken to the opinion of that Court, which now came up with the record, and which, with all the material facts, are noticed in the opinion of the Chief Justice.

*Smith* and *Hopkins* for the plaintiff in error.

*Godwin* and *Duncan* contra.

TILGHMAN C. J. The *first* exception is to the admission of a paper purporting to be a copy of the registry of the *German* Reformed Congregation at *Easton,* mentioning the time of the death of *Eleanor De Haas.* This paper is under the seal of the corporation, and certified to be a true copy by *Jacob Arndt* president, and *Thomas Pomp* secretary and preacher of the congregation.

It is enacted by the " act for keeping a registry in reli-
" gious societies," passed in the year 1700, that " the regis-
" try kept by any religious society in their respective meet-
" ing book or books, of any marriage, birth or burial within
" this province or the territories thereof, shall be held good
" and authentic, and shall be allowed of on all occasions
" whatever."

This act is in conformity to the principles of the common law. The registry is good evidence of the death, but before it is admitted, proof must be made of its authenticity. The act is silent as to the mode of proving this; we must therefore have recourse to the common law proof, which is by producing the original registry, or a copy proved by the oath of a witness who has compared it with the original. It

was contended that the *German* Reformed Congregation being a body corporate, a certificate under the seal of the corporation was evidence of the truth of the copy. But I know of no such principle. Corporations being invisible bodies, can make a contract only by their seal, which is visible. This is from necessity. But there is no necessity for their certifying copies of their acts. It might be convenient if such certificates were received in evidence; but that alone will not authorize courts of justice to receive them. The party against whom a fact is to be proved, has a right to call for the oath of a witness, except in those cases where it is otherwise ordered by act of assembly. I am therefore of opinion that the paper ought not to have been admitted.

The *second* exception is to the opinion of the Court, as to the several deeds produced by the plaintiff in support of his title. This opinion was that from these deeds, i. appeared that *John Philip De Haas* deceased, under a devise in whose will the plaintiff claimed, died seized of an estate in fee simple. The land in dispute consists of lots in the town of *Lebanon*, amounting to 12 acres and 26 perches. These lots were conveyed in fee simple to different persons, by the proprietaries of the town, reserving an annual perpetual ground rent, with power to distrain for the same, and a condition annexed, that if the rent should be behind and unpaid in whole or in part, for the space of thirty days next after any of the days on which it ought to be paid, and no distress could be found on the premises sufficient to satisfy the rent in arrear, with all costs and charges, it should be lawful for the grantors, their heirs or assigns to re-enter and hold the same as in their first and former estate, and from and after such re-entry the indenture by which the estate was conveyed to the grantee should be void and of no effect, and it should be lawful for the grantors, their heirs and assigns to grant, bargain and sell the premises or any part thereof to such persons and for such estates as they should think fit, free from the claim and demand of the grantees or their representatives. The plaintiff, doubting whether he should be able to deduce a direct title to the whole premises from the proprietaries of *Lebanon*, gave in evidence a deed from the defendant *Francis Stoever* and others proprietors of the said town to *Samuel Miley*. This deed contains reci-

tals, in which it is said that two contiguous lots, part of the premises, after several conveyances mentioned in the said recitals, *became the property* of the said *J. P. De Haas*, also that the said *De Haas* became entitled to and possessed of another lot, part of the premises originally granted to a certain *James McNeiff*, and that the said *De Haas* having died possessed of the said three contiguous lots, without having paid any part of the rents for upwards of three years before the time of his death, and his executors having neglected or refused although often required, to pay the same after his death, the said *F. Stoever* and the other grantors, being the true and lawful owners and proprietors of the rent charges issuing out of the said lots, did by virtue of the condition annexed to the several grants, re-enter into the said lots, no sufficient distress being to be found on the same, and sell the same at public auction to the said *Miley* for the sum of 35*l.* 11*s.* 0*d.*, subject to a yearly ground rent of 3*l.* 0*s.* 9¾*d.* The counsel for the defendant contended that it did not appear by these recitals that *De Haas* had more than a life estate, because it is not said that there was any conveyance to him, his heirs and assigns. But from the whole scope of the recital I think it is plainly to be inferred that the estate was in fee; for when we speak of a man's having *property* or *title*, in general a fee is intended. The recitals are not set up as a conveyance, but as evidence of a conveyance. If they operated as a conveyance, a fee could not pass without apt words; but being only designed to describe the estate which had passed by other conveyances, it is sufficient if such estate is described with reasonable certainty. It must be confessed however, the description is not so certain as to be conclusive. The defendant might have shewn by the conveyance to *De Haas*, that his estate was less than a fee simple. The defendant also contended that if the plaintiff makes use of the recitals he must take them altogether, and then it appears on the whole, that granting *De Haas* to have been seized in fee, his estate was defeated by the subsequent re-entry of the proprietors and sale to *Miley*. But to this it was answered and I think justly, that those recitals are only evidence and no estoppel to the plaintiff, who does not claim under the deed in which they are contained. What a man says *against himself*, may be taken for true against himself

and those claiming under him; but there is not the same force in his declarations in his own favour. The plaintiff therefore was at liberty to deny that the proprietors had made a re-entry in the manner required by law for taking advantage of a forfeiture. It is to be observed however that as to all but about three acres and 64 perches, the plaintiff produced other direct evidence of title.

The *third* exception is that for three acres 64 perches, part of the premises in dispute, the plaintiff shewed no deed or any kind of title, and therefore the Court should have directed the jury to find as to so much for the defendant; instead of which they were told they might *presume* a deed, if the circumstances of the case would satisfy them that that there was reason for such presumption. The charge of the Court does not appear to have been precisely as the defendant states it. For it was submitted to the jury, whether these three acres and 64 perches were not included in a deed from *Jacob Voght* to *J. P. De Haas.* It is indeed said by the Court that the jury have a right to presume a deed, if the circumstances of the case will justify the presumption. These expressions are very vague, and rather tend to perplex than to direct the jury. What circumstances will justify the presumption of a deed, I take to be matter of law; and it is the duty of the Court to give an opinion whether the facts proved will justify the presumption. This part of the case however is not important, as the jury did not find for the plaintiffs for that portion of the land.

The *fourth* exception is more important. The defendant who claimed under a re-entry and sale by the proprietors of the town of *Lebanon,* for a forfeiture incurred by the non-payment of rent, offered to give evidence of a custom in the said town, to proceed in the same course which the proprietors had taken in this instance. This evidence the Court rejected, and I think very properly. Miserable will be our condition, if property is to depend, not on the contract of the parties, expounded by established principles of law, but on what is called the custom of particular places, so that we may have different law in every town and village of the Commonwealth. There are indeed cases, in which the common law of *England* has not been adopted in this country; and in such cases it was necessary to shew what the custom

had been here; but those were general customs pervading the whole state, such as the conveyance of land by deed from a *feme covert*. What is the true construction of the ground rent deeds in the case before us, how far our courts will adopt the principle of relieving against a forfeiture, established in the court of chancery of *England*, or after what length of time accompanied by possession, it ought to be presumed that a re-entry has been legally made, although the evidence may be lost, are questions not now to be decided, although at a proper season they will be well worthy of serious consideration. All that is at present to be determined, is, whether the case is to be governed by the written contract, or an extrinsic custom, and of this I have no doubt. Indeed the evidence proposed hardly deserved the name of a custom. It only went to shew, that the proprietors of *Lebanon* had always been used to proceed in the same manner as in the present instance. It appears that the town had been laid out upwards of forty years. If the proprietors proceeded legally, it is all very well. But if they have been in the habit of endeavouring to dispossess people of their freeholds without law, why should it be sanctioned? Where they have made re-entries and sales, and the purchasers have made valuable improvements within the knowledge of the original grantees, without their interference, much may be said in favour of their proceedings, and as such cases arise they will no doubt be decided on equitable principles. There is no danger of shaking ancient titles. But in the case before us, there can be no inconvenience from a decision on the fair construction of the contract. There have been no long acquiescences, no improvements on the faith of the purchaser, and the title under the forfeiture is vested in one of the proprietors themselves. I am therefore of opinion that the court was right in rejecting the evidence (*a*).

The remaining exceptions are to the deed from *J. P. De Haas* the son, to *Whitman* the lessor of the plaintiff. It is first objected, that the grantor being out of possession could not make a legal transfer of the estate. But without entering into the consideration of the law of *England*, it may be

(*a*) The whole law in relation to a re-entry for non-payment of rent under a condition in a ground rent deed, may be found in a learned note to 1 *Saund.* 287, *note* 16.

affirmed with certainty that the law as held there was never adopted here. From the equality of condition of persons in this country, there was no danger of *maintenance* from the interference of *powerful individuals*, and the abundance and the *cheapness* of land rendered it necessary to admit of its transfer with almost the same facility as personal property. For these reasons, when deeds and devises of land have been considered in our courts, it has never been made a question whether the grantor or devisor was in or out of possession, and to make it now, would disturb what has been looked upon as settled. There is no weight therefore in this objection. Another exception to the deed to *Whitman* is, that it did not convey the legal estate, but was only an agreement to convey at a future time. But it is immaterial whether it was an immediate conveyance of the legal estate or not, because at all events it authorized *Whitman* to take the possession, which is all that is necessary to support an ejectment. Last of all it was insisted, on the part of the defendant, that *Whitman* ought not to recover because *De Haas* had made a prior deed to *Jacob Weirech*. But the deed to *Weirech* was not a conveyance, but only an agreement to convey in case *De Haas* should recover in an ejectment then depending. It does not appear that *Weirech* is opposed to the plaintiff's recovery, and I see no reason why that deed should stand in his way. If the title of the defendant ultimately proves good, neither *Weirech* nor *Whitman* can recover. But if *Whitman* recovers in this suit, it will be time enough to settle the equity between all parties interested. On the whole, I am of opinion, that the judgment should be reversed, and a *venire de novo* awarded.

YEATES J. gave no opinion, not having been present at the argument.

BRACKENRIDGE J. concurred with the Chief Justice.

Judgment reversed.