H. P. HOWARD ET AL. v. W. W. RUSSELL ET AL.

No. 7087.

**1.   Traced Copies.**—Traced copies offered in connection with photographic copies of signatures material in the case were properly excluded. But as the photographic copies evidently are more accurate, no injury could follow the exclusion of the traced copies.

**2.   Ancient Records of Masonic Lodges—Pedigree.**—Upon an issue of pedigree in a trial had in September, 1888, it was competent to show by examined copy the record of proceedings of a Masonic lodge held in 1836, reciting a fact pertinent to the inquiry in the trial. See facts.

**3.   Certificate to Effect of Ancient Records.**—Such certificate is incompetent as evidence. An examined copy of such part of the records as may be relevant to the issue should be produced.

**4.   Impeaching Witness.**—The depositions of an aged witness were taken by one of the parties. A lawyer in employ of an adverse party subsequently visited the witness. *Held,* that his testimony giving his opinion as to the capacity of the witness to testify was not competent; he was not an expert, nor did he testify to the capacity of the witness at the time her depositions were taken.

**5.   Pedigree—Evidence.**—In seeking to establish the identity of a deceased intestate by one claiming to be an heir, testimony to the deceased having changed his name having been admitted, it was also competent to admit his declarations that he had killed a man and had fled the country as reason for such change of name.

**6.   Same.**—Conversations between the deceased and a witness touching the personal resemblance between deceased and one claiming to be his brother, and present at the conversation, are competent.

**7.   Hearsay.**—To corroborate a witness who testified to the declarations by the deceased that he had killed a man, the depositions of witnesses were read to the effect that they had heard of the killing and that the deceased had committed the act. *Held,* that the testimony was hearsay and should have been excluded.

**8.   Date of Establishing a Postoffice.** — A witness having testified to having received a letter from Camden, Arkansas, in 1835, it was sought to impeach the witness by reading from an encyclopedia that the town of Camden was so named in 1842. *Held,* that the testimony was properly excluded. The records of the general postoffice department at Washington could furnish competent testimony to date when the postoffice at Camden was established.

**9.   Liability for Costs.**—In a contest for the administration parties intervened, some favoring each of the contending litigants. *Held,* proper to give and impose such costs to the allies of the main contestants as are adjudged between the principals.

APPEAL from Fannin.   Tried below before Hon. D. H. Scott, Special District Judge.

The opinion states the case.

*Evans & Evans, Robert H. Taylor,* and *Walton, Hill & Walton,* for appellants.—1.   The identity of Colmore Bean, of Bonham, Texas, the reputed father of Tom Bean, deceased, with the maker of the power of attorney being a relevant fact, and the original power of attorney being shown to be beyond the jurisdiction of the court, and appellant unable to produce it for inspection, it was competent to permit the jury to compare the tracing of the signature with the original signature and the pho-

tographic copies of signatures of Colmore Bean in evidence on the question of pedigree. Eborn v. Zimpelman, 47 Texas, 503, and note in 26 Am. Rep., 320; Houston v. Blythe, 60 Texas, 506; Leathers v. Salvor Wrecking Co., 2 Wood, 682; Church v. Milwaukee, 31 Wis., 512; 1 Whart. on Ev., sec. 676, and cases cited; Rogers on Exp. Test., secs. 144, 145, 146; Laws. Exp. and Opin. Ev., note 1, p. 277; 2 Poth. on Ob., sec. 6, p. 156; Reynolds' Steph. Ev., art. 71.

2. If, and in so far as, photographic or certified copies or other secondary evidence was admissible, the traced copies were also admissible as a means of proving the relevant fact of similarity or identity of handwriting of Colmore Bean. Lewis v. San Antonio, 7 Texas, 314; 1 Greenl. on Ev., sec. 84, note 2. As to scope of investigation on questions of identity. 1. Whart. on Ev., sec. 24.

3. The copies of the lodge records, being sworn to and certified, in the manner offered were admissible on the issue of pedigree, in connection with the other evidence as to the fact of Colmore Bean being a member of the Masonic order, and his residence in Palmyra and membership in that lodge, in the absence of any proof of motive on the part of the maker of said records to make false recitals as to said Bean. · Greenl. on Ev., sec. 115; 1 Whart. Ev., secs. 194, 196, 198.

Whether ancient records of proceedings prove themselves. Goodwin v. Jack, 62 Me., 416; Lewis v. Marshall, 5 Pet., 475; Jackson v. King, 5 Cow., 238.

Sworn copy of entries of baptisms and marriages in records of church held admissible on question of pedigree. See Gaines v. Relf, 12 How., 522, as to how copies of records may be authenticated for use in cases of pedigree, citing 1 Phil. on Ev. (Cow.), 432, and 2 Id., 133.

4. The original records being, according to date, ancient documents, would, if propounded, have been admissible without proof of the handwriting or death of the secretary or recording officer who made them, and their non-production being excused, secondary evidence of their contents was admissible, and the sworn and certified copies were admissible.

As to presumptions in favor of verity of ancient documents generally. Johnson v. Timmons, 50 Texas, 521.

Ancient entries in steward's book admitted without proof of handwriting. Wynn v. Tyrwhitt, 4 B. & Ald., 376; 6 Eng. C. L., 524.

Ancient parish certificates. Rex v. Inhabitants Whitechurch, 7 Barn. & Cr., 573; 14 Eng. C. L., 258.

5. The abstract from the records of the lodge made and sworn to by the witness Short, and the certified and sworn copy of records made part of witness Schutz's deposition, were admissible and relevant on the question of pedigree and identity. Abbot's Trial Ev., 102.

6. As to the abstract or summary from records as sworn and certified by the witness Short, the records are shown to be ancient and in proper

custody, and being voluminous, the abstract or summary as to their recitals concerning Colmore Bean were admissible. 1 Whart. on Ev., sec. 80; Reynolds' Steph. on Ev., p. 102, art. 71h.

7. The witness Mary Ann Hutchinson was a material witness for contestant. Her deposition, taken in November, 1887, had been read in evidence by contestant without objection, the interrogatories to and answers by the witness Wm. Birney, tending and operating as they did to impair and discredit the testimony of said witness Hutchinson by introducing before the jury evidence as to her mental and physical condition at a date subsequent to the time when her deposition was taken, were inadmissible, and should have been excluded from the jury by the court, and its refusal so to do is reversible error.

8. As to deceased's confessions of crime testified to. Gaines v. Relf, 12 How., 539; Rev. Stats., art. 2248.

9. Facts of personal and not public interest not provable by reputation in community. 1 Whart. Ev., sec. 187. Particular and insulated facts not provable by hearsay. Jackson v. Etz, 5 Cow., 319.

10. The fact of the existence or non-existence of rumors of the character stated was not in issue; the relevant fact—even if Saunders' story of the murder and flight were attacked—was whether or not the killing and flight took place; and the evidence was improperly admitted. 1 Whart. Ev., secs. 253, 254. Whether evidence is admissible merely to corroborate testimony of an unimpeached witness as to immaterial facts. Jackson v. Etz, 5 Cow., 320.

11. The encyclopedia was competent to show the history of Camden. Wade v. De Witt, 20 Texas, 400; State v. Hoyt, 46 Conn., 337; Morris v. Harmer's Heirs, 7 Pet., 557; Quackenbush v. Railway, 35 N. W. Rep., 525; Roe v. Strong, 14 N. E. Rep., 294; Whiton v. Albany City Ins. Co., 109 Mass., 24; Reynolds' Steph. on Ev., 59, art. 35; 1 Greenl., sec. 497, note 1; 1 Whart. Ev., sec. 664, note 4.

*M. F. Morris*, also for appellants. — 1. Upon exclusion of the tracings of Colmore Bean's signatures. Burton v. Drigs, 20 Wall., 125; Deery v. Cray, 5 Wall., 795; Tulkerson v. Holmes, 117 U. S., 399; 1 Greenl. on Ev., secs. 21, 142, 570.

2. As to the exclusion of the transcripts from the records of the Masonic lodges in Washington and Palmyra. Chirac v. Reinecker, 2 Pet., 613; Jewel v. Jewel, 1 How., 219; Elliott v. Piersol, 1 Pet., 328; Douglass v. Sanderson, 2 Dall., 116; Lewis v. Marshall, 5 Pet., 470; Hyam v. Edwards, 1 Dall., 2; Deery v. Cray, 5 Wall., 795; Blackburn v. Crawford, 3 Wall., 175; Davis v. Wood, 1 Wheat., 6; Scott v. Ratliff, 5 Pet., 81.

3. The testimony of the lawyer Birney upon the mental capacity of the witness Mrs. Hutchinson was irrelevant, and could have no other

·effect than to mislead the jury. 1 Greenl. on Ev., sec. 53, and notes; District of Columbia v. Armes, 107 U. S., 519; Evans v. Heltich, 7 Wheat., 453.

*Taylor & Galloway* and *Richard B. Semple*, for appellees. — 1. The oath of allegiance, which appellants relied on as the standard of comparison for said traced copies, having been erroneously admitted in evidence over the objection of appellee, the said traced copies were rightly excluded. Smyth v. Caswell, 67 Texas, 567; Laws. on Exp. Test., rule 58; Macomber v. Scott, 10 Kans., 339.

2. The photographic copies of these signatures having been permitted by the court to go to the jury, the exclusion of the traced copies of the same signatures was immaterial. Moore v. Anderson, 30 Texas, 224.

3. Touching the exclusion of the copies of the Masonic lodge at Palmyra, appellees make the following counter propositions: The records themselves were inadmissible, and consequently copies could not be admitted. 1 Whart. on Ev., sec. 208, note 1; Ins. Co. v. Schwenk, 94 U. S., 593. The exclusion of this evidence, if erroneous, was immaterial. Moore v. Anderson, 30 Texas, 224.

4. Witness Birney having seen witness Hutchinson shortly after the testimony was taken, was rightly permitted to give his opinion as to her capacity to testify, and state the facts on which he based his opinion. Rogers v. Crain, 30 Texas, 284; Haney v. Clark, 65 Texas, 93; Garrison v. Blanton, 48 Texas, 299.

Counsel cited the additional authorities: 2 Whart. on Ev., secs. 1077; 1108; State v. Danforth, 48 Ia., 43; Primm v. Stewart, 7 Texas, 178; Fowler v. Lewis, 25 Texas Supp., 380; 1 Whart. on Ev., sec. 664; Wade v. De Witt, 20 Texas, 400; Endick v. Endick, 61 Texas, 559; Rev. Stats., arts. 1421, 1861, 1889; Teel v. Terrell, 58 Texas, 257.

GAINES, ASSOCIATE JUSTICE.—W. W. Russell, one of the appellees, instituted this proceeding in the County Court of Fannin County. It was an application for his appointment as administrator of the estate of Thomas C. Bean, deceased. The applicant alleged that Bean had died intestate, being at the time of his death a resident of that county; that he had left an estate of the probable value of two hundred thousand dollars, and that a necessity existed for an administrator by reason of the fact that there were debts against the estate. The applicant further alleged that he was not disqualified to act as administrator, and that he was a person of good character, residing in the county, but did not claim that he was either a creditor of the estate or of the next of kin of the deceased. Appellant H. P. Howard filed an answer contesting the application, alleging that he was of the next of kin to the deceased, and that he resided in the State of Texas, and praying that the administration be granted to him. Sarah

A. Dove also appeared and contested Russell's application, averring that she was an heir and of the nearest of kin to the deceased, and praying for the appointment of H. P. Howard.

J. W. Saunders also filed an objection to the appointment of an administrator, alleging that he was a brother of the deceased, and praying that in the event an administration should be deemed necessary that he be appointed.

The case was tried in the County Court and resulted in a judgment in favor of Howard, from which Russell appealed to the District Court. E. J. Short and others intervened in the suit in the District Court, claiming to be assignees of all the interest of J. W. Saunders, the alleged brother of the deceased, in the estate, and opposed the appointment of Howard as administrator, and prayed for the appointment of Russell, should the appointment of an administrator be considered necessary. John S. Bean and others, claiming to be next of kin and heirs of the deceased, also intervened and opposed the appointment of Howard and prayed the appointment of Russell in the event letters of administration were granted. The case was tried before a jury in the District Court and resulted in a verdict and judgment in favor of Russell.

There was a motion in the District Court to dismiss the appeal on the ground that the bond was not in conformity with the statute which prescribes the nature of the obligation to be given upon appeals from the County Court in matters of probate. Rev. Stats., art. 2201. The bond is given for a definite sum, and we have held this is sufficient, although the statute does not provide that the obligation shall name any particular amount. Hicks v. Oliver, 71 Texas, 776. There was no error in overruling the motion to dismiss the appeal.

The contestant Howard claimed and offered testimony tending to show that the deceased was a son of one Colmore Bean, who was a brother of George Bean, and it was admitted that Howard was the grandson of George Bean. The proof showed that the deceased was about seventy years of age at the time of his death, and that he was never married; and it also tended to establish that if he was the son of Colmore Bean, his father and mother were dead, and that his brothers and sisters were also dead and had left no descendants.

There was evidence tending to show that a Colmore Bean, who was a brother of contestant Howard's grandfather, had lived in Washington City from about 1812 to about 1818; that from there he had moved to Northumberland County, Virginia, and that from there he had moved to Palmyra, Missouri, about the year 1836; that he had removed thence to Fayetteville, Arkansas, and thence to Fannin County, Texas, about the year 1843. There was testimony tending very strongly to show that Thomas C. Bean, the deceased, was the son of this Colmore Bean. In order to show that the Colmore Bean who had lived at these several

places was one and the same person, the contestant offered in evidence an oath of allegiance to the Republic of Texas, signed and sworn to by Colmore Bean before the chief justice of Fannin County on the 3d day of April, 1845, accompanied with a photographic copy of an application for membership to a Masonic lodge in Palmyra, Missouri, signed by Colmore Bean, and found among the records of that lodge; also a photographic copy of a power of attorney purporting to have been signed by Colmore Bean in Northumberland County, Virginia, dated March 30, 1824, and found among the records of the Supreme Court in the District of Columbia; and also photographic copies of two subsistence vouchers signed by Colmore Bean and found among the archives of the United States Treasury Department. These last were dated in 1813. After the photographic copies of such documents had been introduced the contestant also offered to introduce in evidence traced copies of the same signatures. These latter copies were made by the custodians of the respective documents by placing transparent paper over the signatures and tracing the writing on the paper with a pen. The keepers of the originals testified to the identity of the tracing and the manner in which the work was done.

.This evidence was in our opinion correctly excluded. We have been cited to no case in which such tracings have been used, and this fact seems to us an argument against the evidence. The art of tracing copies of documents upon transparent paper is not we think of very recent origin, and it would seem that if such tracings were properly admissible in evidence some precedent for such practice could have been shown. But however that may be, the photographic copies, which, in each case, were proved to be of the exact or nearly the exact size of the originals, were admitted, and we think they should be deemed more accurate representations of the originals than any ordinary traced copies. An inspection of the photographic copies in comparison with the signature to the oath of allegiance can not leave a doubt that they were written by the same hand, and hence it follows that if the court erred in excluding the traced copies the error was immaterial. The evidence was merely cumulative upon a question upon which no additional proof was needed.

The contestant also offered in evidence a copy from the minutes of Palmyra Lodge of Masons, of the date of June 30, 1836, showing that on that day Colmore Bean was present in the lodge as a visitor from Benevolentia Lodge 10, of Virginia. It was shown that the original minutes could not be had, and it was proved by the testimony of the secretary of the lodge that he was the custodian of the minutes and the writing offered was a true copy from the minutes. The testimony in the case showed that Colmore Bean was a Mason; that he subsequently became a member of Palmyra Lodge; that he had lived in Northumberland County, Virginia, and that there was in that county such a lodge as Benevolentia

Lodge.    The evidence offered therefore tended to prove that the Colmore Bean who came to Palmyra in 1836, and moved thence to Fayetteville, Arkansas, and thence to Bonham, Texas, was the person of the same name who at one time lived at Northumberland County, Virginia.    The evidence tended to prove the issue and was relevant.    There is some question as to its legality.    But the recitals in ancient documents have been admitted in proof of facts therein stated even as to persons not parties to them.    In this case the entry on the lodge minutes was more than thirty years old, and we think the presumption should be after such a lapse of time that the entry was correctly made.    Copies of church registers have been admitted in cases of pedigree in courts of the highest authority in this country.    Lewis v. Marshall, 5 Pet., 469; Hyam v. Edwards, 1 Dall. (Pa.), 2; Kingston v. Lesley, 10 Serg. & R., 383; Stewer v. Whitney, 6 Binn., 416.    It would seem therefore that in a case like this, in order to prove a fact occurring fifty years ago, the records of an ancient and well established society may be resorted to upon a question of pedigree.

We are of opinion that the court did not err in excluding the certificate of W. A. Short, secretary of the Federal Lodge of the District of Columbia.    It may be assumed that the witness in his deposition swore to the correctness of the certificate.    But the certificate states merely the conclusion of the witness, derived from the lodge records, as to the time when Coleman Bean became a member of that lodge and the date at which he received his demit.    It appears that the entries showing these facts may have been established by examined copies.    The production of a copy of the entire records was not necessary, and hence the argument that they were so voluminous as to make an exception to the general rule falls to the ground.    It may be that testimony that the records showed nothing in relation to certain facts was admissible.

The contestant read the deposition of one Mary Ann Hutchinson, who testified that she was 84 years of age and resided in Washington City. She further testified that she knew a Colmore Bean at one time in that city, and that he had two brothers named respectively George and John, and that he was a carpenter.    The other testimony in the case showed beyond contradiction that the Colmore Bean who lived at Palmyra, Missouri, and subsequently came to Bonham, was a carpenter.    It was also in evidence that the Colmore Bean who lived in Northumberland County, Virginia, was also a carpenter or joiner.    The testimony of this witness was important to the contestant.    Her deposition was taken in November, 1887.    Such being the case the applicant was permitted, over the objections of contestant, to read to the jury the deposition of a witness residing in Washington City, who after testifying in effect that in January, 1888, he visited Mrs. Hutchinson at her residence, proceeded as follows:

"This was a small one story frame dwelling, with a front and back

room. The door was opened by a robust and respectable looking woman about sixty years of age, who inquired my business, and on my stating that I wished to see Mrs. Hutchinson, in order to procure some information from her, she conducted me, after some hesitation, into the back room. On one side of this room was a couch, on which lay a very old woman, covered with a coverlet. From her appearance I judged her to be a very feeble woman. I stated that the object of my visit was to get information from her about Colmore, George, Richard, and John Bean, who lived a long-time ago in the county or in that part of Washington City. As soon as I had done speaking, the woman in attendance upon the invalid forbade her to speak, saying, 'You know you have been told not to talk upon that subject.' The invalid, however, paid no attention to her attendant, but began to talk rapidly and in an incoherent way about Colmore Bean, frequently repeating, 'I did know Colmore Bean; he lived here on the hill.' I spoke quietly to her, trying to calm her nerves, which were evidently in an exhausted condition, and the old lady continued to talk, not addressing herself to me particularly, a part of the time covering her head with the coverlet. I explained to the attendant that I did not wish to disturb Mrs. Hutchinson, but I would like to get what she knew, and I presumed there was no objection to her telling me what she knew about the family. But the attendant repeated her direction to the invalid to be silent, telling her that talking upon that subject would upset her, and that she knew it. I soon saw that any conversation with Mrs. Hutchinson was quite impracticable, and I bid them good morning and left."

The witness further testified: "The mental condition of Mrs. Hutchinson, to the best of my judgment, was that of great debility, owing to old age and broken down constitution. Her appearance was that of a person who had gone through in her life a great deal of hardship. I have already stated that she was lying on a couch in the back room of this house. I should say that she was over seventy-five years of age, or about that. I have seen persons no older than that who had been broken down by hard work. I can not tell whether her mental condition was temporary or permanent, as it may have been owing in part to a temporary sickness. I do not know how long she had been in that condition. Her surroundings were those of a poor person, sick, and in charge of a nurse. From what I saw of her I should consider her testimony worthless. She talked while I heard her loud enough and distinctly enough, but what she said was so disconnected that I was unable to attach any meaning to it, except to the simple phrase that she did know Colmore Bean. I have no other means of telling how long she had been in this condition than the statement of her attendant. In my best judgment, Mrs. Mary Ann Hutchinson, as I saw her, could not repeat with accuracy occurrences of forty to sixty years ago, or indeed make any consecutive statement of facts.

I do not think in fact she could make a coherent statement which would require forty or fifty words to state it."

In our opinion the testimony should have been excluded. Admitting for the sake of the argument that it was competent to show the mental condition of the witness Mrs. Hutchinson at the time her deposition was given, it does not follow that this could be established by testimony of her condition at some other time. The witness by whom her weakness of intellect and failure of memory were sought to be shown was not an expert, and his opinion as to the value of her testimony was clearly incompetent. We think the entire testimony of the witness Birney which was objected to should have been excluded.

J. W. Saunders testified that the deceased, Thomas C. Bean, was his brother; that the name of the deceased was not Thomas C. Bean, but Thomas L. Saunders; that some time about 1834 his brother came to him and stated that he had killed a man in Obion County, Tennessee, and had fled the country, and that he then announced that he would change his name to Thomas C. Bean. The witness further testified that Bean then left, going west; that the witness next saw him in St. Louis, Missouri, in 1850, and that he then said that he lived in Bonham, Texas. This evidence, which was given much more in detail, was objected to by contestant, but was admitted over his objection. In support of the theory that J. W. Saunders was the brother of deceased, it was clearly competent to show that the latter had changed his name, and we think also it was competent to show the circumstances which induced the change, as detailed by himself at the time it was done.

The applicant was also permitted to prove, over contestant's objection, by one Jones, that on one occasion on the streets of Bonham he was introduced by Thomas C. Bean to J. W. Saunders, and that witness remarked to Bean, "You looked enough alike to be kinfolks," and that Bean replied, "Oh, no; not kin exactly." We think the reply of Bean was relevant, and that the remark of the witness which elicited the reply was also admissible in order to make the latter intelligible.

In order to corroborate the testimony of Saunders as to the reasons which induced the deceased to assume a name, the applicant read the depositions of two witnesses residing in Obion County, Tennessee, who testified that they had heard that one William Crutchfield was killed about 1834 near Reelfoot Lake in that county, while assisting in surveying land, by Thomas L. Saunders. The evidence was objected to and should have been excluded. The testimony was clearly hearsay.

J. W. Saunders testified in effect that about six months after his brother absconded from Tennessee, which occurred in 1834 or 1835, he received a letter from him signed Thomas Bean, post marked and mailed at Camden, Arkansas. In order to disprove this, contestant offered to read in evidence so much of the text of the American Encyclopedia as·

related to Camden, Arkansas, and which contained the statement that. that town was settled in 1842, and that previous to that time it had only been a place at which hunters and trappers congregated, and had been known by the name of "Ecore a Fabre." The applicant objected to the: introduction of the evidence and the court sustained the objection. In this there was no error. If the fact be as contestant sought to prove, there is better and more satisfactory evidence than the statement in the work offered in evidence by contestant. The records of the postoffice department will probably supply indisputable testimony as to the date when the postoffice at Camden, Arkansas, was established and when it. received that name.

We are of opinion that there was no error in rendering judgment against Sarah A. Dove for costs. She appeared in the suit, alleging that she was next of kin to the deceased, and prayed for the appointment of Howard. She made common cause with Howard by her pleading, and thereby made herself responsible for the costs in the event the applicant prevailed in the suit. She did more than assent to Howard's appointment. She contested the application of Russell.

E. J. Short and others who intervened in the suit, although they did not show facts that entitled them to administer, did show by allegations that they had an interest which, if the allegations were true, entitled them to oppose Howard's appointment. Having been successful in their opposition they were entitled to recover their costs. Rev. Stats., art. 2198.

We do not consider it proper to discuss the evidence in view of the fact that the case will be remanded. The other questions presented by the assignment may not again arise and need not be considered.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered November 19, 1889.