FANNIE E. MALLORY v. D. M. FERGUSON.

1. DISTRICT COURT, *Clerk of — Examining Titles.* It is no part of the official duty of a clerk of the district court to make searches of the records in his office for judgments, liens, or suits pending, affecting the title to real property, and certify to the result of such search.

2. ABSTRACT OF TITLE — *Certificate of Clerk — Loss — Liability.* Where a clerk of the district court, who is neither a lawyer nor engaged in the business of making abstracts, signs a certificate appended to an abstract of the title to certain real estate, as follows: " I further certify, that there are no judgments, mechanics' liens or foreign executions on file or of record in this county, or any attachments or other suits pending in said county against said within-described lands, nor against any of the grantors or grantees, herein, nor against any other person through whom title herein is derived, except ——. D. M. FERGUSON, Clerk District Court, Miami county, Kansas. Dated this 8th day of April, 1885. [SEAL]"— and receives therefor 25 cents, which is the fee allowed by law for a certificate alone, it will not be presumed, in the absence of evidence, that such clerk agreed to make a careful search, and correctly certify as to the condition of the title to such land, but the burden of showing an express agreement to do so rests on the plaintiff; and such clerk will not be held liable for any mere errors of judgment or want of skill in determining the legal effect of a suit pending in the court of which he is clerk. A party relying on the certificate of such clerk, in the absence of such agreement, must himself bear whatever loss ensues from want of skill or honest errors of judgment on the part of such clerk.

3. PRIVITY OF CONTRACT — *Liability.* Whatever liability is incurred in any case by such clerk is to the person for whom the certificate is made and not to his grantee; and before the plaintiff can recover he must show that he employed the defendant to perform the service.

4. LOSS TO PLAINTIFF — *Defendant, not Liable.* The defendant in this case made, on an abstract of title, the certificate above mentioned, and received 25 cents therefor. There was a suit pending affecting

the title to the lands described in the abstract, which was prosecuted to judgment, and resulted in loss to the plaintiff. The defendant was not a lawyer nor an abstracter, nor did he claim to have any skill in making searches of records, but erroneously supposed it was his duty to make such certificate. There is no claim that he acted in bad faith, or corruptly, but, under the findings of the court, appears to have used such care and judgment as he was ordinarily capable of exercising. *Held,* That the defendant is not liable in this action.

### *Error from Miami District Court.*

ACTION by *Fannie E. Mallory* against *D. M. Ferguson,* to recover damages sustained by reason of defendant's certificate to an abstract of title to land. At the October term, 1889, there was judgment for defendant, and plaintiff brings error. All of the material facts appear in the opinion, filed February 11, 1893.

*Jno. C. Sheridan,* for plaintiff in error:

Having engaged in the business of examining titles and furnishing abstracts thereof, for which he receives compensation, the defendant in error impliedly represents himself to the public as one competent to conduct it, and that he will at least use ordinary care and diligence in the discharge of it. That is the law as to abstracters of titles. 1 Am. & Eng. Encyc. of Law, 48; Mart. Abs. of Titles, §181; Story, Bailm. 431; Whar. Neg. 749; 20 Fed. Rep. 39; 34 Mo. 429; 70 Ill. 268; 4 Mo. App. 108; 26 Mo. 280; 73 Ind. 17; 1 Laws. Rights, Rem. & Pr. 128.

But if it be urged that the defendant cannot be treated as an abstracter, he must be considered in the class of search clerks.

"In some of the states it is the practice for the examiner, after having ascertained the chain of title by inspection of the records, to direct written requisitions to the clerks of the various offices for searches for incumbrances or liens of record that may affect the property. In large cities this method is rendered necessary, or at least convenient, in order to avoid the throng of applicants which would otherwise crowd the

offices, and also to prevent subjection of the records to the carelessness or fraudulent designs of the searchers. . . . The liability of all such officers is either fixed by statute, or is established under the general law of negligence. They are also liable for the acts or omissions of those whom they delegate to do the work." Mart. Abs. of Titles, 183; Gerard, Titles to Real Est. 757; 33 How. 247; 70 Ill. 268; Shearman & R. Neg., § 288; 12 Pa. St. 227. See, also, 15 Cent. Law J. 482; 95 U. S. 439; 16 Am. & Eng. Encyc. of Law, 389; 5 Ill. 395.

It may be urged that, because the defendant did not transact the business directly with the plaintiff or deliver the certificate directly to her, he cannot be held liable in damages to her. The authorities incline to the rule that a stranger subsequently sustaining damage by relying on such certificate cannot have recourse upon the maker of the certificate, because there cannot be said to be any privity of contract between them. 81 Pa. St. 256. But an abstracter who furnishes an abstract to a vendor is liable to a vendee who relied on it in purchase of the property at the time. 14 S. W. Rep. (Tenn.) 896. See, also, *Donaldson v. Haldone*, 7 C. & F. 762; *Page v. Trutch*, 8 Chicago Leg. News, 385; 89 Pa. St. 261; 16 Am. & Eng. Encyc. of Law, 418, 419.

*Selwyn Douglas*, for defendant in error:

There was certainly no contract, and no privity of contract, between defendant in error and Mr. Mallory or Mrs. Mallory. And, without such contract and privity of contract, there can be no liability. *Hughes v. Investment Co.*, 20 Fed. Rep. 39; 81 Pa. St. 256; 18 Cent. L. J. 470; *Roberts v. Loan Company*, 63 Iowa, 76, 18 N. W. Rep. 703; *Savings Bank v. Ward*, 100 U. S. 195. See, also, *Chase v. Heaney*, 70 Ill. 268; Warvelle, Abstracts, pp. 7, 8, 60, 66.

The clerk of the district court ought not to be held liable, if liable at all, to anyone but his employer, Chandler. *Walker v. Stevens*, 79 Ill. 193; *Read v. Patterson*, 11 Lea (Tenn.) 430; *Collard v. Griffin*, Barnes, 37. The liability of abstracters of title in the perforance of their work is the same,

in degree, as that of attorneys at law, physicians and surgeons, and others, who hold themselves out to the public as skilled and competent to perform the services of the profession or trade to which they respectively belong, or profess to follow, as a trade, profession, or business. They are held responsible for ordinary care and skill and reasonable diligence in the performance of their work.

An attorney is responsible for ordinary care, skill, and reasonable diligence; such skill and prudence only as is usually exercised by lawyers of average capacity and ability, and he is liable only for gross neglect. Weeks, Att'ys at Law, §§ 284, 293; *Pitt v. Golden,* 4 Burr. 2060 ; *O'Barr v. Alexander,* 37 Ga. 195; *Gilbert v. Williams,* 8 Mass. 51; *Caverly v. M'Owen,* 123 id. 574; *Chase v. Heaney,* 70 Ill. 268; *Morrill v. Graham,* 27 Tex. 646 ; *Eggleston v. Boardman,* 37 Mich. 14.

He will be presumed to have discharged his duty to his client, with ordinary care and skill, until the contrary is made to appear. *Bowman v. Tallman,* 27 How. Pr. 212; *Pennington v. Tell,* 11 Ark. 212 ; Weeks, Att'ys at Law, § 283. See, also, *Almond v. Nugent,* 34 Iowa, 300; *Ritching v. West,* 23 Ill. 385; *Barnes v. Means,* 82 id. 379; *O'Hara v. Wills,* 14 Neb. 403; *Smother v. Hanks,* 34 Iowa, 286 ; *Small v. Howard,* 128 Mass. 131; *Geiselman v. Scott,* 25 Ohio St. 86; *Graham v. Gautier,* 21 Tex. 111; *Branner v. Stormont,* 9 Kas. 51.

The opinion of the court was delivered by

ALLEN, J.: This action is brought by the plaintiff to recover from the defendant damages which she claims to have sustained by reason of the defendant having certified on the abstract of title to a certain lot in Paola, as follows :

"I HEREBY CERTIFY, That there are no judgments, mechanics' liens, foreign executions, or suits pending, on the records of this court, against any of the above-named grantors or grantees, affecting the title of the above-described real estate, except as above stated. Dated this 8th day of April, 1885.	D. M. FERGUSON,
*Clerk of the District Court, Miami County, Kansas.*"

Plaintiff alleges, in substance, that, relying upon this certificate, she purchased the property described in the abstract, and paid therefor, in cash, the sum of $5,000; that, in truth and in fact, there was a suit then pending in said district court, wherein one Sutton S. Clover was plaintiff, and William G. Oakman, Hattie E. Oakman and others were defendants, in which said Clover claimed to own an equitable interest in said lands, and sought to recover the same. Plaintiff further alleges, that said suit, last mentioned, was tried in said district court, and that said Clover was by said court adjudged to be the owner of the undivided one-fourth of said property; that plaintiff was compelled to pay $1,000 to buy in the interest of said Clover, and that she paid attorney fees and expenses in defending said action to the amount of $385; that she had demanded payment from the defendant and that he refused. The defendant admits that he was clerk of the district court, and that he signed the certificate set up in the petition. The defendant denies that he was engaged in the business of making abstracts. The defendant alleges that said abstract was made by one C. W. Chandler, who was engaged in the business of making abstracts of title, and that said defendant signed the same as an accommodation to the said Chandler. He alleges that, before signing the certificate, he made a diligent, thorough and careful examination of the records in his office, and, as a result of said search and examination, was satisfied of the truth of said certificate. He alleges that he examined all the records and papers in said suit of Clover v. Oakman, and was convinced that the title to said real estate was not involved in said suit of Clover v. Oakman. The defendant also alleges that the party for whom said abstract was made was unknown to him at the time he signed said certificate, and that he signed it for the sole advantage and profit of said C. W. Chandler. The undisputed evidence shows that the defendant was paid 25 cents for this certificate. It also shows that the title to the land mentioned in the abstract was in dispute in said suit of Clover v. Oakman; that Clover obtained judgment for one-fourth

44 — 50 KAS.

interest therein; that the plaintiff bought in said interest and paid $1,000 for it; and that she paid attorney's fees amounting to $310 in defending against the claim of said Clover in that action, she having been made party defendant to the action subsequent to the purchase from Oakman and wife of the property described in the abstract. This case was tried before the court without a jury, and a general finding was made in favor of the defendant, and judgment rendered against the plaintiff for costs.

There is no showing that Mrs. Mallory, the plaintiff, or her husband, C. H. Mallory, whom the evidence shows was her general agent in making the purchase of the property, had any conversation directly with the defendant. The evidence does show that Mallory employed said C. W. Chnadler to make the abstract. It also shows that Mallory paid to Chandler 50 cents in addition to Chandler's own charges for the certificates of the clerk of the district court and the treasurer. The defendant claims that his understanding of the matter was that the abstract was made for Oakman, and upon this question the testimony is not entirely clear. On cross-examination, C. H. Mallory was asked this question:

"Ques. You may state if you recognize that paper — you examine there [handing witness paper], and did n't you answer in reply to that question this: 'That is the abstract that Mr. Oakman presented to us, made by Mr. Chandler?' Ans. Well, that was part of the papers; yes, sir."

C. W. Chandler, on cross-examination, testified as follows:

"Q. What did Mr. Mallory say to you about what he wanted that abstract of title for? A. When he first came to the office he said he wanted it for Mr. Oakman — that is, Mr. Oakman wanted the abstract, and he spoke to us for it.

"Q. You told him you would not make the abstract for Mr. Oakman unless Mr. Mallory would pay for it? A. Yes, sir.

"Q. Then, he told you to go on and make it and he would pay for it? A. Yes, sir; he said he would see it was paid for.

"Q. Then you went on and made it? A. I did."

The defendant testified, among other things:

"Ques. Did Mr. Mallory ever say anything to you in connection with the matter? Ans. I do n't recollect Mr. Mallory saying anything.

"Q. Did he ever have anything to say to you on the subject? A. No, sir.

"Q. You say you signed this certificate at the request of Mr. Chandler? A. Yes sir; C. W. Chandler. I examined the record for Mr. Chandler, at his request.

"Q. What was Mr. Chandler's business at that time? A. He was in the loan business and the abstract business.

"Q. Before you signed that certificate at that time, you may state whether you made a careful examination of the records. A. I did make a careful examination of the records.

"Q. And you may state what, if any, conclusion you came to with reference to anything in that suit affecting the title to that property — the property alleged to be described in that so-called abstract of title. A. My opinion, according to the best of my judgment, was, that it did not affect the title; of course, it was a complicated case. It was my understanding I was simply to exercise my judgment as best I could."

And again:

"Q. Was there any talk in your office, at the time this certificate was certified to, as to who was the owner of this property, or as to whom this abstract was for? A. I understood Mr. Chandler to say he was making it for Mr. Oakman through Mr. Mallory, at the request of Mr. Mallory; that Mr. Mallory was going to purchase the property.

"Q. There was something said about Mr. Mallory in connection with it? A. In the talk, that Mr. Mallory was going to purchase."

The evidence shows that the defendant frequently made similar certificates on abstracts, for which he charged and received the uniform fee of 25 cents. He testifies, however, that he frequently made such certificates without receiving any fee therefor. There is no pretense on the part of the plaintiff that the defendant was either an attorney at law, or engaged in the business of making abstracts of title, except so far as such certificates relate to an abstract. There was no special contract or agreement with reference to this particular certificate, but it was made by the defendant, as he claims,

Mallory v. Ferguson.

with the understanding on his part that it was his official duty to make such certificates, and that the law allowed him a fee of 25 cents therefor.

It is important to determine — first, whether there was any undertaking on the part of the defendant to perform any services whatever for the plaintiff in this case; second, if there was such undertaking, what services did the plaintiff undertake to perform? There having been a general finding by the trial court in favor of the defendant, all doubts as to the weight of the evidence must be resolved in his favor.

We are not prepared to say that the uncontradicted evidence shows that the defendant was employed by Mrs. Mallory, through her agent, to make this certificate, and, if we were forced to decide this case on this point alone, we should have to hold that the general finding of the trial court in favor of the defendant included a finding that the defendant was not employed by the plaintiff to make the certificate. We do not, however, rest our decision on this point alone, but will consider the second proposition also. If the making of the certificate on the abstract was not done under an employment from the plaintiff, can she recover in this case?

2. Abstract of title—certificate of clerk—loss —liability. We think the great weight of authority is to the effect that the party making the examination and certificate is liable only to his employer, and never to a stranger or third party. (*Investment Co. v. Hughes,* 20 Fed. Rep. 39.) In the case of *Houseman v. G. M. B. & L. Ass'n,* 81 Pa. St. 262, Mr. Justice Sharswood, in delivering the opinion of the court, says: "It was decided by the present chief justice at *nisi prius,* in the case of *Commonwealth v. Kellogg,* 6 Phila. Rep. 90, that this liability is to the party who asks and pays for the search, and does not extend to his assignee or alienee. The decision in the case of *P. B. & L. Ass'n v. Houseman,* 89 Pa. St. 261, seems to be somewhat in conflict with the doctrine as stated by Justice Sharswood in

3. Privity of contract—liability. the case above cited. We think that the rule as stated is sustained both by the weight of reason and authority, that there must be privity of contract to create liability.

In the case of *Savings Bank v. Ward*, 100 U. S. 105, the supreme court of the United States holds:

"Where A., an attorney at law employed and paid solely by B. to examine and report on the title of the latter to a certain lot of ground, gave, over his own signature, this certificate: 'B.'s title to the lot [describing it] is good, and the property unincumbered.' C., with whom A. had no contract or communication, relied upon this certificate as true, and loaned money to B., upon the latter executing, by way of security therefor, a deed of trust for the lot. B., before employing A., had transferred the lot in fee, by a duly-recorded conveyance, a fact which A., on examining the records, could have ascertained had he exercised a reasonable degree of care. The money loaned was not paid and B. is insolvent. *Held*, First, there being neither fraud, collusion or falsehood by A. nor privity of contract between him and C., he is not liable to the latter for any loss sustained by reason of the certificate; second, that usage cannot make a contract where none was made by the parties."

We think that the judgment of the district court might be upheld on the ground that there was evidence tending to show that the employment of the defendant was made in behalf of a person other than the plaintiff. We shall proceed, however, with the consideration of the more important question involved in the case — whether, conceding the existence of such employment by the plaintiff, the nature of the employment renders the defendant liable in this action. The defendant was clerk of the district court of Miami county, Kansas. He testifies that in making this certificate he supposed he was merely performing a duty imposed on him by law. It is nowhere made the duty of the clerk of the district court to search the records in his office for judgments, liens, and suits pending, nor does the statute provide any fee for any such service. It is not contended in this case that there was any special contract or agreement between the parties as to the particular service he was to perform, but it is contended on the part of the plaintiff that the defendant was in the habit of making such certificates for pay, for the uniform fee of 25 cents, and that

1. District court, clerk of—examining titles.

because of such practice he was liable for any error in such certificate. The law does allow the clerk of the district court a fee of 25 cents for his certificate and seal. Can it be said that, because the defendant was in the habit of making certificates of the character of this one, and charging therefor the sum of 25 cents, that he is liable for any error or misstatement contained therein? Ordinarily the certificate of the clerk of the district court is attached to copies of records, or to other written instruments, for which, if made by the clerk himself, he is also entitled to payment. If the defendant had been called upon to make a full transcript of all the records in the case of Clover v. Oakman, over his certificate of the correctness thereof, and had he made what purported to be such transcript, to the correctness of which he appended his certificate, we do not doubt that he would have been liable for any error or omission in the transcript through which the party receiving and paying therefor was injured. In this case, however, the clerk certifies not to the correctness of a transcript which he has made, but to the legal effect of the whole volume of all the records in his office on the title to this land.

Authorities are cited by counsel for the plaintiff in error, which, he contends, hold the defendant liable. These authorities must be considered with reference to the statutes which were construed by the courts in making their decisions. In the case of *Zeigler v. Commonwealth*, 12 Pa. St. 228, the court says:

"In Pennsylvania it has ever been a portion of the duty of the prothonotary to make searches. It is an incident of his office as a keeper of the records of the county. The fee bill gives him compensation for his services and for his certificates."

In the case of *Lusk v. Carlin*, 5 Ill. 395, which was an action on the official bond of the recorder of deeds for failing to note a mortgage in his certificate of search, the court says:

"It is contended that it is not a duty of the recorder to examine and give information whether land is incumbered, as

it would frequently involve a question as to the legal effect of the conveyance of record. In this sense of examination, he is not bound to make it; but we are of the opinion that he is bound to search and give information of the fact whether there are deeds, mortgages or writings concerning the land, and refer the party to them, so he may be enabled to judge for himself, and take counsel as to the manner in which the title is affected, or the estate incumbered by them. The search should be diligent and his information true, as for it he is entitled to compensation."

The court refers to various provisions of the statutes of Illinois, relating to the duty of the recorder, and says:

"The whole scope and spirit of these provisions seem to me to point out this service as an official duty of the recorder, and I think the fees, perquisites and emoluments of his office a good, continuing and valuable consideration to charge the surety in the bond, within the principle laid down in the case of *United States v. Linn,* 15 Pet. 311."

In New York and other states it is made the duty of certain officials having the custody of public records to make searches and certify the result thereof, and it is held that the officer is liable for any error or misstatement in such certificate. We have not been able, however, to find any case, nor has counsel called our attention to any, where the officer has been held liable on a certificate which the law did not require him to make, and where he received no compensation for making the search. In Warvelle on Abstracts, page 66, the author says:

"It is frequently the custom of the examiner to append to an abstract of this character certificates of the officers having the custody of records examined, yet in the majority of cases the said certificates do not materially enhance the value of the examination as evidence, and, unless forming a part of their official duty, create no responsibility on the part of the certifying officer."

This case is in itself a strong illustration of the hardship of a rule which should hold the clerk of the district court liable for any error in such a certificate for the sum of 25 cents, which he would be entitled to have for making any

formal certificate whatever. Under the plaintiff's theory of this case, he would be held bound to examine every record in his office which in anywise affected the title to these lands, and to state over his signature correctly the legal effect of every record which in any manner affected the title. There is nothing in this case tending to show that the defendant was called on to make any transcripts of any records in his possession. Had the plaintiff obtained a transcript of the pleadings in the Oakman case, in the exercise of ordinary business prudence, she would have submitted such transcripts to a counselor learned in the law for his opinion as to their effect on the title to this property and as to the risks she would incur by purchasing the property, pending such litigation. Many authorities are cited by counsel as to the liability of attorneys, physicians and other persons who fail to use care and skill in their employment. These authorities cast but little light on this case. The general doctrine we think is correctly stated in Story on Bailments, § 435 :

"Where the particular business or employment requires skill, if the bailee is known not to possess it, or he does not exercise the particular art or employment to which it belongs, and he makes no pretension to skill in it, there, if the bailor, with full notice, trusts him with the undertaking, the bailee is bound only for a reasonable exercise of the skill which he possesses, or of the judgment which he can employ ; and, if any loss ensues from his want of due skill, he is not chargeable."

There is no evidence in this case tending to show that the defendant held himself out to the public as skilled in the examination of public records, or in determining their legal effect. He himself testifies that he used such care and judgment as he possessed, and that it was his opinion that the title to the property described in the abstract was not affected by the Clover suit. If the plaintiff employed the defendant at all to pass his opinion, or to certify as to the effect of the records in that case, she certainly employed him for a very meager consideration. We are not prepared to say that any consideration whatever was paid in this case for a search. The defendant did not claim to be a lawyer, nor was there

auy evidence that he claimed to have skill. We think the plaintiff was not entitled to the benefit of any higher order of judgment than the defendant in fact possessed, and that, in relying on such a certificate so obtained, if loss occurs, she must herself bear it, under all the circumstances as they are shown by the record in this case. Certainly there is a wide difference between the liability of a lawyer, or other person claiming to have especial qualifications for determining questions affecting the title to land, and that of a layman, who neither has, nor professes to have, any. We conclude, then, that the defendant is not liable for any error in judgment as to the condition of the title to the land described in the abstract,

**4. Loss to plaintiff—defendant, not liable.** even though such error be a gross one, and it may well be doubted whether he would be liable where he receives merely the fee allowed by law for a certificate, unless guilty of fraud or willful mistatement.

We think the judgment of the trial court was right, and it will be affirmed.

All the Justices concurring.