Davis, J.
So far as we have been able to discover, there has been no exception to the general rule that an action against an abstracter to recover damages for negligence in making or certifying an abstract of title, must sound in contract, the general rule being, that the abstracter can be held liable only to the person who employed him Savings Bank v. Ward, 100 U. S., 195; Eq. B. & L. Association v. Bank, 118 Tenn., 678; Mallory v. Ferguson, 50 Kans., 685; Schade v. Gehner, 133 Mo., 252; Talpey v. Wright, 61 Ark., 275. Even in the exceptional cases in which courts have sought to mitigate the rigor of the rule, that object has been accomplished by straining the doctrine of privity of contract. The following are typical *443 cases of that kind: Brown v. Sims, 22 Ind. App., 317; Denton v. Nashville Title Co., 112 Tenn., 320; Economy B. & L. Association v. West Jersey Title Co., 64 N. J. L., 27.
The plaintiff in error, however, through his counsel, fully and frankly disclaims any reliance whatever* upon the contract of the abstracter; and claims that his rights exist independently of contract. The theory is that the defendant knowing of the custom alleged (which, in substance, is that all subsequent parties dealing in respect to that real estate would rely upon and act. upon the accuracy of the abstract) a legal duty was thereby imposed upon it to make the abstract accurate, and that, therefore, the certificate by the defendant to its employer would enure to the benefit of all subsequent grantees, by “a natural continuous sequence uninterruptedly connecting the breach with the damage, as cause and effect.” It is at this point, as we think, that the theory of the plaintiff in error breaks down.
In the first place, it is elementary law that uSage| or custom cannot create a contract or liability where none otherwise exists. A usage or custom can only be used to explain, or aid in the interpretation of, a contract or liability already existing independently of it. It cannot be permitted to contradict or vary the express terms of a contract; nor can it vary the legal import of a contract. We need not go far for ‘authority as to this statement of the law. In Savings Bank v. Ward, supra, Mr. Justice Clifford said: “Testimony was introduced at the trial tending to show that there is a local usage in the district that *444 the attorney examining- the title of such an applicant for a loan shall be considered as also acting for the lender of the money, and complaint is made that the court below did not submit the evidence to the jury, with proper instructions. Evidence of usage is not admissible to contradict or vary what is clear and unambiguous, or to restrict or enlarge what requires no explanation. Omissions may be supplied in some cases by such proof, but it cannot prevail over or nullify the express- provisions of the contract. So, where there is no contract, proof of usage will not make one, and it can only be admitted either to interpret the meaning of the language employed by the parties, or where the meaning is equivocal or obscure. Thompson v. Riggs, 5 Wall., 663, 679.” In Columbus & Hocking Coal & Iron Co. v. Tucker, 48 Ohio St., 60, this court said, per Spear, J.: “Equally immaterial, as we think, is the matter óf custom among coal operators in the Hocking Valley and the surrounding mining districts near thereto, of depositing slack and refuse on their own lands, when such custom is invoked to justify deposits so placed as to naturally allow them to wash down to the injury of lands lying below them. The right of the plaintiff to the uninterrupted use of his land, and the unimpaired use of the water of Monday creek being secured to him by the common law, how is it possible that a custom can deprive him of them? Why should a usage, the effect of which, if recognized, is to permit one man to take from another his property rights without compensation, be sanctioned? If it be assumed that the custom is a genera] one, then
*445 it is part of the common law itself, anc mere would be presented an instance of. two rules of law, equally binding, and yet wholly inconsistent the one with the other. If it be claimed that the custom is a particular one, then we have the anomaly of a landowner's common law right in his land taken from him by a usage of a particular trade established by strangers, which it is not pretended he has ever been cognizant of, much less assented to. To have affected the plaintiff, the custom must have been shown to have been reasonable and certain, known to him, or to have been so general and well established that knowledge would be presumed, peaceably acquiesced in, and not unjust, oppressive, or in conflict with an established rule of public policy. The alleged custom possessed scarcely one of these attributes. Even though it had been common throughout the state, it would not avail. A usage which is not according-to law, though universal, cannot be set up to control the law. Meyer v. Dresser, 111 Eng. C. L. R., 646; Stoever v. Whitman, 6 Binn., 416; Inglebright v. Hammond, 19 Ohio, 337.”
In the second place, in the absence of fraud or such mistake as a court of equity would recognize, in order to uphold the theory advanced in this case it would be necessary to ignore the doctrine of caveat emptor, which requires a vendee to protect himself by investigation and express covenants.
In the third place, the fantastic and impracticable theory that “a natural continuous sequence uninterruptedly connecting the breach with the damage, as cause and effect,” gives rise to a cause of action to each subsequent grantee, his heirs *446 and' assigns, on through “the corridors of time” to eternity, may be, as it seems to us, conclusively answered in the words of Beasley, C. J., in Kahl v. Love, 37 N. J. L., 5, 8, viz.: “There would be no bounds to actions and litigious intricacies if the ill-effects of the negligence of men may be followed down the chain of results to the final effect.”
The argument founded upon certain classes of decisions, designated as sub-vendee cases, telegraph cases, time-table cases, professional cases, and director cases, does not impress us as possessing any relevance to the issue here. Those decisions are founded upon a public, or quasi public, nature inherent in the business or transactions involved. The transaction which is the basis of this action contained no element.of deceit or fraud; it was a mere private contract of employment for services upon a subject-matter about which the public were not, and could not be, concerned. In the nature of the transaction it could not be fairly implied that the public, or any considerable part of the public, would be concerned with the subject-matter of the transaction; or that the manner in which it must be conducted would depend on a custom which is contrary to law, and which would relieve a purchaser from the obligation to investigate fot himself the title to property which he purchases.
The judgment of the circuit court is •

Affirmed.

Summers, C. ■ J., Crew, Spear, Spiauck and Price, JJ., concur.