HOUSTON OIL CO. OF TEXAS v. LANE.
(No. 285.)

(Court of Civil Appeals of Texas. Beaumont. Dec. 12, 1917. Rehearing Denied Jan. 23, 1918.)

1. TRESPASS TO TRY TITLE ⬦⟿41(1)—SUFFICIENCY OF EVIDENCE.

In trespass to try title, where both parties claimed through a common source, evidence *held* sufficient to show that a vendee in defendant's chain of title was not an innocent purchaser for value as to a prior vendee in plaintiff's chain.

2. DEEDS ⬦⟿38(4) — DESCRIPTION — SUFFICIENCY.

A patent ambiguity was not disclosed by a description of land as 1,000 acres lying on the "west of a half" of a named league rendering the deed void, where the record showed that the grantor only owned the west half of the league, making it apparent that the conveyance was of 1,000 acres of the west end of the east half of the named league.

3. VENDOR AND PURCHASER ⬦⟿231(1)—CONSTRUCTIVE NOTICE—RECORD OF DEED.

After a deed was recorded subsequent purchasers were charged with constructive notice thereof.

4. VENDOR AND PURCHASER ⬦⟿231(3)—BONA FIDE PURCHASERS—NOTICE—RECORD.

Purchasers are only charged with notice of facts exhibited by the record, and not with such as might have been ascertained by such inquiries as an examination of the record might have induced a prudent man to make.

5. VENDOR AND PURCHASER ⬦⟿231(3)—BONA FIDE PURCHASERS — NOTICE — CHAIN OF TITLE.

Every purchaser of land is chargeable with all that the real estate records show in the claim

of title under which he claims, including all recitations therein.

Error from District Court, San Augustine County; W. R. Blackshear, Judge.

Trespass to try title by W. H. Lane against the Houston Oil Company of Texas. Judgment for plaintiff, and defendant brings error. Affirmed.

Kennerly, Williams, Lee & Hill, of Houston, and H. O. Head, of Sherman, for plaintiff in error. Blount & Strong, of Nacogdoches, for defendant in error.

BROOKE, J. Defendant in error sued in trespass to try title for a portion of the Nathaniel Hyden headright league in San Augustine county, describing it as follows:

"Being 700 acres off the south end of a tract of 1,000 acres on said league, said 1,000 acres to be taken off the west end of the east half of said league."

Defendant answered by general demurrer, general denial, and plea of not guilty.

Judgment was entered awarding to plaintiff the land sued for in his petition, said judgment containing the exception and notice of appeal. The case was tried before the court without a jury, and no motion for new trial was filed.

Plaintiff's title was:

(1) Grant, State of Coahuila and Texas to Nathaniel Hyden, 10/14/35.

(2) Nathaniel Hyden to Lansing & Watson, dated 7/2/36, filed 6/4/51, conveying the east half of the Nathaniel Hyden headright league. One of the witnesses was John W. Holman.

(3) Lansing and Watson to John W. Holman, dated 9/14/36, filed 1/1/38, conveying the east half of the league. This deed recites that all the parties thereto were residents of San Augustine county, Tex. Same was acknowledged by James Lansing December 22, 1837.

(4) John W. Holman to James G. Barksdale, dated 3/26/37, filed 4/4/74. This deed recites:

That the said John W. Holman, in consideration of $3,000 paid by Barksdale, "has granted, bargained, sold, and remised and quitclaimed, and by these presents doth remise and quitclaim, unto the said J. G. Barksdale, his heirs and assigns forever, to a certain tract or parcel of land * * * in the county of San Augustine, and containing one thousand acres. The said land lyes between the Eyish bayou and the River Angelina in the forks of said stream in Zavalla's colony about 10 or 12 miles from the town of Jackson. The said land lies on the west of a half of the league of land obtained from the government by the citizen Nathaniel Hyden from the legal commissioner as a colonist, which may be seen by reference to the records at Nacogdoches. The field notes of said land is returned with the following account of timber, oak, ash, dogwood, gum, elm, etc., shoemake and myrtle. * * * To have and to hold * * * said premises."

It concludes with a special warranty. Said deed is witnessed by James Ellison and Sanford Holman, and was proved for record by the affidavits of Elizabeth Thomas and America Aiken, sisters of John W. Holman and Sanford Holman, to the effect that the handwriting of the said witnesses and the grantor was known to affiants, and that the signatures of their said names were in their handwriting. These affidavits were made at Shelbyville, Tenn., March 13, 1874.

(5) J. G. Barksdale and wife, P. A. Barksdale, to W. H. Lane, dated 7/18/74, filed 5/6/13. This deed conveys all the right, title, claims, and interest—

"which we have in and to a certain tract of land containing 700 acres situate and lying in the county of San Augustine, state of Texas, in the south part of said county between the Ayish byo and Angelina river, said land being bought by us from John W. Holman and duly registered in the register's office in San Augustine, on the 6th day of April, 1874, in Book J–2 pp. 502 and 503, for a more particular description of the 1,000 acres of which the above conveyance is a part, reference is here had. [The deed from John W. Holman to James G. Barksdale, supra, is recorded in Book J–2, p. 502.]

"To have and to hold the same to the said W. H. Land, his heirs and assigns forever. * * * *"

Said deed concludes with general warranty. It is acknowledged by them before the county clerk of Bedford county, Tenn., July 18, 1874. Said deed contains certificate of P. C. Steele, clerk of the county court of Bedford county, Tenn., dated May 2, 1913, and stating that Robert L. Singleton, whose name appears to the above certificate, was at that time county clerk of said county. It also contains certificate by the chairman of said county court that P. C. Steele was the acting county clerk, and had been for more than ten years, and that his acts are entitled to full faith and credit. This certificate was dated May 2, 1913. Same contains a further certificate by P. C. Steele dated May 2, 1913, that W. E. Gant was the sole judge of the probate court of said county, and that the attestation was in due form of law.

John W. Holman was a common source of title, and one of the questions in the case is as to whether William W. Holman, his vendee, was an innocent purchaser against the deed to Barksdale.

Defendant's title is as follows:

(1) John W. Holman to W. W. Holman, dated 2/8/38, filed 2/12/48. This deed conveys, in consideration of $1,200 cash, the east half of the Hyden league, and contains general warranty. Same is headed "Republic of Texas, County of San Augustine," and was witnessed by S. Holman and Willis Jones, and acknowledged in Shelby county, Tex., August 3, 1839.

(2) Wm. W. Holman to J. George Woldert, dated 7/7/58, filed 7/10/48, conveying a tract described by metes and bounds, and calling for bearing trees and other natural objects, stated to contain 425 acres out of the northeast corner of said league. This deed was acknowledged July 10, 1848.

(3) J. Geo. Woldert to Wm. W. Holman, dated 12/12/53, filed 12/12/53. Said deed conveys the same land conveyed in the foregoing deed, and concludes as follows:

"It is expressly understood that I warrant no further than me and heirs. Said land was sold to me by said William W. Holmes, and was surveyed out of a wrong league, which will show on record in Book G, p. 284, we both have no right to it." (Book G, p. 284, contains a record of the deed just preceding.)

This deed acknowledged December 12, 1853, by the grantor before the same officer as the foregoing deed was proved before.

(4) William W. Holman to George Woldert, dated 12/7/53, filed 12/28/53. This deed conveys 425 acres out of the northeast corner of the Hyden league. This deed was acknowledged by the grantor on the 28th day of December, before the same officer that the foregoing deed was acknowledged before.

(5) J. G. Woldert to G. W. Norsworthy, dated 11/12/81, filed 1/12/82. This deed conveys the same land as the foregoing deed, and was acknowledged by the grantor November 12, 1881.

(6) G. W. Norsworthy to H. Kempner, dated 2/28/82, filed 8/23/82. This deed conveys the same land as the foregoing. It was acknowledged by the grantor February 28, 1882.

(7) W. W. Holman to Lucius I. Holman, dated 1/8/74, filed 1/10/74. This deed conveys, in consideration of $500 cash paid, "810 acres of land part of the Nathaniel Hyden league, situate in the county of San Augustine and state aforesaid, and about 20 miles south of the town of San Augustine, the same to be an undivided interest in the Nathaniel Hyden league, and the said 810 acres of land being the interest owned by my father in the said league of land, as will appear by reference to the record of real estate for the county of San Augustine and state aforesaid, together with all and singular the rights, members, hereditaments, and appurtenances to the same belonging, or in anywise incident of appertaining."

This deed concludes with a general warranty. This deed was witnessed by W. H. Crouch, and J. H. Shark. It is headed "State of Texas, County of San Augustine," and recites that the grantor is a resident of San Augustine county, Tex., and the same was acknowledged by the grantor on the 8th of January, 1874, before the district clerk of San Augustine county, at San Augustine, Tex.

(8) Estate of L. J. Holman, by administrators, E. A. Blount and J. E. Harrison, to W. H. Ford, dated 9/23/81, filed 9/24/81. This deed recites that on the ——— day of ———, 1881, the county court of San Augustine county granted an order for the private sale of 810 acres of land, part of the Nathaniel Hyden survey, and that on September 16, 1881, the undersigned administrator of the estate of L. J. Holman, sold said 810 acres at private sale to W. H. Ford, which was duly reported and confirmed, as follows:

"In the Matter of the Estate of L. J. Holman, Deceased. September 21, 1881. * * * It is therefore ordered, adjudged, and decreed that said sale be confirmed, and that the report thereof be recorded by the clerk of this court according to law, and the administrators of this estate are ordered to make the proper conveyance of said 810 acres of land, N. Hyden survey, on the Ayish bayou, in San Augustine county, Tex., to W. H. Ford, of Jasper, Tex., the purchaser at said sale for the sum of $567 upon his complying with the terms of said sale."

Said deed then recites:

That, in consideration of the premises and of the payment of $567 cash, the said administrators "bargain, sell, and convey unto the said W. H. Ford 810 acres of land on the west side of the Ayish bayou, about 30 miles south of the town of San Augustine, and the said 810 acres hereby conveyed being an undivided interest in and to a tract of 1,864 acres, said 1,864 acres being all of the east half of the said Hyden league except a tract of 1,400 vrs. sq. in the northeast corner of said league, which was conveyed by W. W. Holman to J. G. Woldert, the said Ford to have and to hold said 810-acre tract of land unto himself, his heirs and assigns forever, in fee simple, as fully and completely as we, acting in our capacity as administrators, can convey the same."

This deed is signed by E. A. Blount and J. E. Harrison, as administrators of the estate of L. J. Holman, deceased, and acknowledged by them September 18, 1881, before notary public in San Augustine county.

(9) W. H. Ford to G. W. Norsworthy, dated 9/28/81, filed 10/17/81. This deed conveys—

"810 acres of land of the headright survey of N. Hyden, situate on the Ayish bayou, in San Augustine county, state of Texas, it being the 810 acres of land conveyed to me by E. A. Blount and J. E. Harrison, administrators of the estate of L. J. Holman, deceased, on the 23d day of September, A. D. 1881, and to said deed reference is hereby made for a more particular description of said 810 acres of land herein conveyed."

(10) Will of W. W. Holman, dated April 15, 1876. This will recites that the testator is a resident of Denton county, Tex., and provides that all his property, both personal and real, after payment of his debts, be equally divided between his wife, Ann Catherine Holman, and his two children, William L. Holman and John O. Holman, and appoints Lucius I. Holman as the executor of said will, and his (testator's) wife, Ann Catherine Holman, to act as executrix of same, and that if one refuses to act, that the other should act, if possible, and authorizes either to sell any of his lands to pay his debts. It provides that neither the district court of Denton county nor any other court of Texas should have anything to do with the administration of his estate except to have the will probated and recorded, and his property inventoried and appraised, and he directs that his executor and executrix be not required to give bond.

(11) Testimony of subscribing witnesses, dated July 22, 1876, and order of the probate court of Denton county on said date admitting said will to probate, and appointing Lucius I. Holman and Ann Catherine Holman as executor and executrix, without bond, as directed in said will. The date of the death of Holman does not appear thereon, except as shown by the affidavit it must have

been between July 22d and April 15th, the date of the will.

(12) Inventory of the estate filed by Copenhaver, W. Holford, and J. P. Anderson, sworn to July 25, 1876. It states that the said inventory is just and correct, to the best of their knowledge and belief, and it also contains an affidavit by Lucius I. and Ann Catherine Holman, stating that the said inventory is a full, fair, and complete inventory of said estate. The inventory of the real estate contains about nine tracts in Denton county, nine tracts in Harrison county, and six tracts in other counties, one of which is San Augustine county, and is a part of the Jones Hobby survey. The estate was appraised at $46,150.

(13) W. W. Holman, by executrix, to G. W. Norsworthy, dated 10/19/81, and filed 11/9/81. This deed recites that Ann Catherine Drain, formerly Ann Catherine Holman, of Denton county, executrix of the will of W. W. Holman, deceased, her former husband, joined by her present husband, Sam Drain, of the county of Denton, in consideration of $1,000 cash paid, as such executrix does grant, bargain, sell, convey, release, and deliver unto the said G. W. Norsworthy in fee simple and absolute interest all the right, title, claim, and interest which the estate of my former husband, W. W. Holman, deceased had, or has in and to the east half of the Nathaniel Hyden league of land, lying and being situated in the county of San Augustine, Tex., on the Ayish bayou, about 3u miles south of the town of San Augustine, on the west side of the Ayish bayou. The abstract of title to the east half of said league of land is as follows:

"Government title to Nathaniel Hyden for one league of land, 10/14/35; Nathaniel Hyden to Lansing & Watson for whole league, 7/2/36, Book H, 248; Lansing & Watson to John W. Holman for the east half of said league, September 14, 1836, Book D, 82; John W. Holman to W. W. Holman, east half of said league, February 8, 1838, Book G, 231, and by this instrument of writing all of the said half league of land commencing at the bayou and running back with both of the original lines a sufficient distance to embrace one-half of said league is conveyed, saving and excepting 810 acres conveyed to Lucius J. Holman, and a tract conveyed to J. G. Woldert by W. W. Holman in his lifetime on the 7th of December, 1853, out of the northeast corner of the said league. See Book I, p. 62, Records of Real Estate for said county of San Augustine, Tex. Together with all and singular the rights, hereditaments, and appurtenances to the same belonging, or in any wise incident or appertaining, to have and to hold the same as fully and completely as I, the said Ann Catherine Drain, can convey the same by virtue of the said last will and testament of my former husband, W. W. Holman, deceased. * * *

"This sale being made for the purpose of meeting the payment of unsettled demands still due and unpaid from the estate of my former husband, W. W. Holman, deceased, aforesaid."

This is signed by Sam Drain and Ann Catherine Drain, executor and executrix of the last will and testament, and is properly acknowledged by both; the married woman's form of acknowledgment being used by Catherine Drain.

(14) G. W. Norsworthy to H. Kempner, dated 12/7/81, filed 8/23/82. This deed conveys, in consideration of $1,000 paid by H. Kempner, that certain tract of land deeded to the grantor by Sam Drain and Catherine Drain by their deed of October 19, 1881, "said tract of land being the east half of the Nathaniel Hyden league of land, less 810 acres deed to Lucius J. Holman, and 425 acres conveyed to J. G. Woldert by W. W. Holman by his deed of conveyance bearing date the 7th of December, A. D. 1853."

(15) Harris Kempner to G. W. Norsworthy, dated 8/18/83, filed 6/22/83. This deed conveys, in consideration of $3,862 cash paid, an undivided one-half interest in those four tracts in San Augustine county, the first being 425 acres, more or less, a part of the Nathaniel Hyden survey conveyed to the grantor by G. W. Norsworthy by deed recorded in Book K, p. 407, of the Records of San Augustine county; second, being 979 acres, more or less, also a part of the Nathaniel Hyden league conveyed to grantor by G. W. Norsworthy by deed recorded in Book K, p. 406, of same records, being the same land conveyed to G. W. Norsworthy by Ann Catherine Drain, executrix of W. W. Holman, deceased, joined by her husband, Sam Drain; third, said tracts being 810 acres, more or less, also a part of the same Nathaniel Hyden survey or league of land conveyed to the grantor by G. W. Norsworthy by deed dated November 26, 1881, Book K, p. 404, of said records; fourth, this tract being out of the Patsey Lewis league.

(16) Power of attorney, H. Kempner to G. W. Norsworthy, dated 6/23/83, filed 6/28/83, granting power to sell his half interest in those tracts described in the foregoing deed.

(17) Harris Kempner, by Attorney G. W. Norsworthy, to Beaumont Lumber Company, dated 8/1/83, filed 6/3/84. In consideration of $1,939 cash paid by F. L. Carroll, J. N. Gilbert, and G. E. Carroll, composing the firm of the Beaumont Lumber Company, and the further sum of $1,931 to be paid by said company February 1, 1885, with interest from June 1, 1883, at 10 per cent. per annum, for which said company has executed its note of even date, to secure payment of which vendor's lien is reserved, said Kempner, by his attorney in fact, conveys an undivided one-half interest in those four tracts described in the foregoing deed. The deed concludes with a general warranty.

(18) G. W. Norsworthy to Beaumont Lumber Company, dated 8/1/83, filed 6/14/84. This deed conveys, in consideration of $1,500 cash paid by the said Beaumont Lumber Company, composed as stated in the foregoing deed, and the further sum of $17,954 to be paid, to secure which vendor's lien is retained, an undivided one-half interest in the lands described in the foregoing deed.

(19) F. L. Carroll, John N. Gilbert, and G. W. Carroll, partnership firm of Beaumont Lumber Company, to Beaumont Lumber Company, corporation, dated 1/1/84, filed 11/28/99. This conveys, among other lands, the east half of the league of land granted to Nathaniel Hyden, being the same lands conveyed to F. L. Carroll, J. N. Gilbert, and G. W. Carroll, composing the firm of Beaumont Lumber Company.

(20) Beaumont Lumber Company and John H. Kirby to Houston Oil Company of Texas, dated 1/3/02, filed 5/22/02, being the same tracts conveyed in the foregoing deed.

(21) Judgment, W. L. Holman et al. v. Houston Oil Co., dated 7/6/11. By this judgment the plaintiff took nothing, and in favor of the Houston Oil Company of Texas for an undivided 810 acres of the east half of the league, excepting the 425 acres conveyed to Woldert, and the balance of said one-half league was decreed to the interveners named.

(22) Judgment in the case of W. L. Holman et al. v. Houston Oil Company of Texas, dated July 23, 1913. This judgment, being a judgment in the same cause as the foregoing judgment, decrees that the plaintiff, W. L. Holman take nothing as to his claim to the east half of the Hyden league, and that the interveners and defendants go hence without day as to said plaintiffs. It was further ordered that the interveners take nothing by their suit against the defendant Houston Oil Company of Texas and Maryland Trust Company for the east half of the Nathaniel Hyden league, excepting 425 acres conveyed to Woldert, for which said interveners did not sue.

(23) Mandate from the Court of Civil Appeals, dated 5/29/16, reciting that the above-styled cause had been appealed to said Court of Civil Appeals, and that same was affirmed.

(24) Agreement that the W. W. Holman named in the deed from W. W. Holman to L. I. Holman, supra, is the son and only heir of the W. W. Holman to whom John W. Holman conveyed by the foregoing deed.

(25) Agreement that E. A. Blount and J. E. Harrison were the duly appointed administrators of the estate of L. I. Holman.

(26) Agreement that W. L. Holman, the plaintiff in the above-styled suit, was the only child of W. W. Holman, Jr., who died in Denton county, and that the interveners in said suit were all the heirs of Lucius I. Holman.

[1] The first assignment of error challenges the action of the lower court in not rendering the judgment for the defendant in this cause, because the undisputed evidence showed that both the plaintiff and defendant claimed their only chain of title through John W. Holman as common source, and that John W. Holman conveyed to William W. Holman, through whom defendant claimed, in the year 1838, and that John W. Holman conveyed to J. G. Barksdale, through which deed the plaintiff claimed on December 26, 1837, so that the burden of proof was, under the statute of 1836, upon the plaintiff to show that the said William W. Holman was not an innocent purchaser for value against the prior deed to Barksdale, and the evidence on this point totally failed to raise the issue as to whether the said Holman was an innocent purchaser against said deed to Barksdale, and therefore the judgment should have been for the defendant.

This assignment is presented as a proposition. On the other hand, as a counter proposition, defendant in error presents and submits the following:

"The evidence on the issue of notice to W. W. Holman of the deed to Barksdale anteceding his own deed was not only sufficient to raise the issue of notice, but ample and convincing under the most stringent rules of evidence to satisfy a court or jury that said W. W. Holman knew of said deed, and did not claim the land adverse to his brother-in-law, J. G. Barksdale, not only that he knew and recognized Barksdale's right, but that after him his son, W. W., so recognized it, and after his nephew, L. I. Holman, who lived with his uncle, W. W. Holman, also recognized it."

With reference to the testimony we shall be compelled to go somewhat into the same, and consider it for the purpose of taking into consideration the testimony and the necessary inferences and conclusions therefrom.

The deed from John W. Holman to J. G. Barksdale, executed March 26, 1837, was witnessed by Sanford Holman and James Ellison, and, as shown by the witnesses Dick Holman and T. W. Blount, Sanford Holman was a brother of W. W. Holman, Sr., and brother-in-law to Barksdale, and James Ellison was close neighbor and lessor of land of W. W. Holman at the time, and that the same Sanford Holman, on February 8, 1838, ten months after the execution of the Barksdale deed, also witnessed the deed from John W. Holman to W. W. Holman, his brother.

There is an admission that in 1837 the records of San Augustine county showed that J. W. Holman owned more than 1,000 acres on the east half of the Hyden league, and owned no other land in the county except on the east half of the said Hyden league. The relationship of parties involved in 1837 and 1838: John W. Holman being brother-in-law to Barksdale, the grantee in the deed, and to W. W. Holman, and said W. W. Holman being a man of large property. The receipt of J. C. Aiken, another brother-in-law of the Holmans, in 1858 given to J. G. Barksdale, is as follows:

"Received of Dr. J. G. Barksdale payment in full of all accounts by settlement up to this date, including $41.00 paid Holman at San Augustine November 1, 1858, as per receipt rendered by Holman for survey and tax this February 18, 1859.    J. C. Aiken."

It was shown that the paper was written wholly in the handwriting of John C. Aiken, acknowledging receipt from J. G. Barksdale of certain moneys, and signed with the genuine signature of John C. Aiken for money paid

by said John C. Aiken for taxes and survey of land; that the paper was found among the valuable papers of J. G. Barksdale. It is shown also that for many years previous to his death, about 1873, W. W. Holman, Sr., rendered for taxes on the Hyden league 1,810 acres for the consecutive years from 1858 up to and including 1872; that W. W. Holman, Jr., was only heir of his father, and in 1874 executed to L. I. Holman, his cousin, a deed conveying 810 acres of land on the Hyden survey, with this very suggestive language:

"The said 810 acres being the interest owned by my father in said league of land, as will appear by reference to the records of real estate for the county aforesaid."

It is further shown that L. I. Holman was one of the executors of the will of W. W. Holman, Jr., who died in 1878, and rendered an inventory of the property of his estate, and did not inventory any land on the Hyden survey, though many tracts worth $46,000 were inventoried. It was further shown that L. I. Holman, who accepted the deed from W. W. Holman, Jr., describing the 810 acres as the interest of W. W. Holman, Sr., in the Hyden league, and who, two years later, as executor of the estate of W. W., Jr., failed to inventory any land on the said league as belonging to said estate, was a nephew of W. W. Holman, Sr., a bachelor, and lived in the same house with his uncle, W. W. Holman, from 1865 to the time of his uncle's death, about 1873. The assertion of ownership by W. W. Holman's sister and her husband, J. G. Barksdale, in 1874, while W. W. Holman and L. I. Holman were both living, by having the deed proven up and recorded, and conveying in 1874 700 acres of land to W. H. Lane, and 200 acres off the north end of the 1,000 acres to Martin L. Smith, and the nonassertion of ownership by any of the Holmans until Mrs. Drain, executrix of the estate of W. W. Holman, Jr., in 1881 makes a deed to Norsworthy. The deed from John W. Holman to Barksdale was duly recorded in 1874, before the deed to Norsworthy made in 1881, and neither Norsworthy nor any owners under him could be innocent purchasers, as they all had full constructive notice of the said Barksdale deed, by reason of said record. It is admitted that under the law in our state the burden of proof is on the plaintiff in this cause to show that W. W. Holman had notice of the Barksdale deed when John W. Holman conveyed to him.

In the case of Houston Oil Co. of Texas v. Holman, 152 S. W. 885, this issue seems to have been passed on without many of the supporting facts that were brought out in the trial of this case. As to the measure of proof and probative effect, it is held in Underwood v. Security Life Co. (Sup.) 194 S. W. 587, that:

"If, discarding all adverse evidence and giving credit to all evidence favorable to the plaintiff, and indulging in every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff," then it should be submitted to a jury, and there would be evidence to support their verdict.

The same rule has been announced in Cartwright v. Canode, 106 Tex. 507, 171 S. W. 696, and in Downs v. Stevenson, 56 Tex. Civ. App. 215, 119 S. W. 317, in which the court says:

"If there be any fact or circumstance tending to show that he is not a purchaser in good faith, the question is one of fact for the jury, and cannot be assumed by the court."

In Cotton v. Cooper, 160 S. W. 601, the court said:

"Direct evidence is not required by law, and juries are allowed to indulge all reasonable inference from the facts revealed to them by the evidence, or which unbiased and rational minds can properly deduce from the facts adduced before them."

As before stated, this case was tried by the court without a jury, and the same rules apply. All the original parties were dead. The Holmans and Barksdales were brothers and brothers-in-law, and it seems to be, from the testimony, that they were men of means and intimate, as brothers are usually, and that Ellison was W. W. Holman's close friend and near neighbor, living on Holman's land, and that this man Ellison and Sanford Holman witnessed the Barksdale deed from W. W. Holman, and that ten months after the same brother, Sanford Holman, witnessed the deed from John W. Holman to W. W. Holman, conveying the whole half league. The transaction was the sale of the only tract of land owned by John W. Holman in San Augustine county, as admitted by this record, and as this was the only tract owned by him, and hence as the deed to Barksdale, witnessed by Sanford Holman, was the only deed for land in San Augustine county up to that time ever executed by John W. Holman, it is probable that Sanford Holman, the brother of W. W. Holman, knew and informed his brother. After this, from the evidence of W. H. Lane, it appears that in 1858 another brother-in-law of W. W. Holman visited San Augustine county, Tex., and while there paid W. W. Holman for Barksdale $41 for taxes and surveying. This can only mean that W. W. Holman had paid taxes and surveying fees for his brother-in-law, Barksdale, and there is not a suggestion that Barksdale owned any other property in Texas than the land in controversy, and the conclusion cannot be escaped that the refund to W. W. Holman was for taxes on this land, the whole 2,214 acres of which he was rendering at the time, as shown by the tax rendition statement in evidence.

Again, from and including the year 1858, for every year to and including 1872, W. W. Holman rendered for taxes 1,810 acres of this Hyden survey, and this up to his death, which fact alone is not suggestive, but following this W. W. Holman, Jr., his son and

only heir, conveys in 1874 to L. I. Holman, a nephew of W. W. Holman, Sr., who had lived with him from 1865 until his death, just 810 acres of the Hyden survey, and describes said 810 acres as the interest owned by his father in said Hyden league, and L. I. Holman, who must have been familiar with his uncle's affairs, accepts such deed with such recitation, and later, in 1876, as executor of estate of W. W. Holman, Jr., inventories thousands of acres of lands, but not one acre on the Hyden. W. W. Holman, Jr., and L. I. Holman evidently fully understood that W. W. Holman never claimed or owned the 100 acres of land sold by John W. Holman to Barksdale, but as long as they lived recognized that 1,000 acres belonged to Barksdale and his sister, Aunt Polly Ann Barksdale, who in 1874 wrote the following letter:

"Shelbyville, March 13th, 1874.

"Leonidas Cartwright—Dear Nephew: I received a letter from you some time ago, but I have been waiting to get my deed ready for registration before answering. I feel under many obligations to you for your kindness and williness you manifest to be trouble with my business, for I am so situated that I am under the necessity of calling on some one, and can therefore more cheerfully ask you to do me the favor of having the inclosed deed registered and returned to me, and also if possible to sell the land for me. When Mr. Thomas was here several years ago, he said that he knew the land and that it was a very rich and valuable tract of land. If so it is possible that you could find a purchaser or it may be that you or some of my nephews who are trading in lands would be willing to buy it at reasonable figures. If you can find a purchaser please let me know at what price and to whom to have the deed made out. Your uncle will make a deed as you may direct signed, acknowledged, and certified ready for registration and forwared to you or he will send you a power of attorney, as you may think best. Please do the best you can for me, for unless we can realize the money from some sorse we will be compelled to make a sacrifice in selling our home. In fact our home is now advetised for sale, owing to our embarrassments growing out of our inability to make the house meet our expences, tax, etc., and the doctor's ill health, which has rendered him unable to do any business since the war. But property here is so low now that we cannot sell it for much more than one half its real value, and not one half what it would have brought before the war. However, could we realize some money upon the Texas land, it would enable us to hold for a better price on our house. After the deed has been registered please return it. All are well.

"Your aunt,    P. A. Barksdale.

"P. S.—Let me know what it cost to have the deed registered and I will remit the money. Please answer this letter as soon as you receive it, so we may know it reached you safely.

"P. A. B."

In the case of Holman v. Houston Oil Co., 152 S. W. 888, the following language is used:

"Neither John W. Holman, W. W. Holman, Sr., nor W. W. Holman, Jr., ever at any time had or claimed to have title to any land on the west half of the Nathaniel Hyden league. The interveners are the sole heirs at law of Lucius I. Holman, who died intestate. * * * It is further a most significant circumstance that, when the widow and executrix of W. W. Holman, Jr., came to sell and convey to Nors-

worthy what she supposed was the land owned by the estate of her deceased husband in the east half of the Hyden league, she excepts from such conveyance not only the 810 acres conveyed by her husband to Lucius I. Holman, but also a 'tract conveyed to J. G. Woldert by Col. W. W. Holman in his lifetime on the 7th of December, A. D. 1853, out of the northwest (evidently a clerical error and intended for northeast) corner of the league. See Book I, p. 61, Records of Real Estate of San Augustine, Texas.' The evidence shows that the deed from W. W. Holman, Sr., to Woldert dated December 7, 1853, and proven for record December 28, 1853, was recorded in Book I, pp. 60, 61, Deed Records of San Augustine County, showing conclusively, if anything more were needed than the face of the three deeds to show this fact, that the executrix of W. W. Holman, Jr., gave the same effect to these deeds; that is, that the last of the two deeds to be delivered was that from Holman to Woldert, thus placing the title to this 425 acres in Woldert, who in 1881 conveyed the same to Norsworthy, followed by consecutive deeds down to appellant, Houston Oil Company. It appears that no other claim was ever asserted until the filing of this suit in 1904. Under this construction of these deeds the title to the 425 acres is in the Houston Oil Company beyond question, and it must be so declared.

"The second question presented by the appeal arises upon the construction of the deed from W. W. Holman, Jr., to Lucius I. Holman. The language of the deed, describing the land conveyed, is as follows: 'Eight hundred and ten acres of land, part of the Nathaniel Hyden league, situated in the county of San Augustine and state aforesaid, and about twenty miles south of the town of San Augustine; the same to be an undivided interest in the said Nathaniel Hyden league, and the said eight hundred and ten acres of land being the interest owned by my father in the said league of land, as will appear by reference to the record of real estate for the county of San Augustine and state aforesaid.' There is no ambiguity in this description upon the face of the deed, no inconsistency or conflict between the description as 810 acres undivided in the league, and the further description of it as the interest owned by the father of the grantor in the league. * * *

"We have shown that Col. Holman had conveyed the 425 acres in the northeast corner. A deed was offered in evidence by the Houston Oil Company, and admitted, not for the purpose of showing title, but in explanation of Holman's intention in the deed to Lucius I. Holman, from John W. Holman, father of W. W. Holman, Sr., to J. G. Barksdale, dated in 1837, and recorded in 1874, after the execution of the deed to Lucius I. Holman, and which conveyed 1,000 acres of land by the following description: 'Lying and being in the county of San Augustine, and containing one thousand acres. The said land lies between Ayish bayou and the River Angelina, in the forks of said streams, in Zavala colony, about 10 or 12 miles from the town of Jackson. The said land lies on the west half of the league of land obtained from the government by the citizen Nathaniel Hyden from the legal commissioner as a colonist, which may be seen by reference to the records at Nacogdoches.'

"It does not clearly appear that this land was a part of the east half of the Hyden league, but there appears to be a strong probability that the particular description, when applied to the ground, would show that it was. It appears further that it was not on record when the deed to Lucius I. Holman was recorded. But there is at least a probability that W. W. Holman knew of the existence of this deed when he made the deed to Lucius I. Holman. The 1,000 acres would be an undivided interest, and, if

this deed be considered as conveying an undivided interest in the east half of the Hyden league then owned by John W. Holman, it would have left, after deducting also the 425 acres, 789 acres undivided as the interest of W. W. Holman, Jr., in the east half of the league, if it contained no more than its proper quantity of land. Then the question would arise: If W. W. Holman supposed that his interest was no more than 810 acres undivided, was it his intention to convey no more than that quantity, or did he intend, at all events, to convey all he owned, without regard to quantity? If the latter, why should he have used at all the terms '810 acres, being an undivided interest in the Nathaniel Hyden league'? There is another circumstance which throws some light upon W. W. Holman's intention and the understanding of Lucius I. Holman as to the land conveyed. In 1881, seven years after the execution of the deed to Lucius I. Holman, his administrators made application to the probate court to sell, and were ordered to sell, and did sell and convey to W. H. Ford, land which it is entirely clear was what they understood as the land conveyed by W. W. Holman to said Lucius I. Holman by the deed under discussion. In their deed the land is described as follows: '810 acres of land, part of the Nathaniel Hyden league, situated on the west side of Ayish bayou about 30 miles south of the town of San Augustine, and the said 810 acres hereby conveyed being an undivided interest in and to a tract of 1,864 acres of the said Hyden survey, said 1,864-acre tract being all of the east half of the said Hyden league, except a tract 1,400 varas square in the northeast corner of said league, which was conveyed by W. W. Holman to J. G. Woldert.'

"It would seem from this deed that the league contained more than 4,428 acres, and that this was known to the administrators. But it seems reasonably clear, at least it is a fair presumption, that the personal representatives of Lucius I. Holman, two years after his death, and seven years after the execution of the deed to him by W. W. Holman, construed that deed to convey only an undivided interest of 810 acres. This certainly was a circumstance to be considered in arriving at the intention of W. W. Holman, and of Lucius I. Holman as well. On the other hand is the circumstance that the executors of W. W. Holman in making an inventory of the property of his estate did not list any land in the Hyden league, evidently supposing that the estate owned none. How far this should be accounted for by the Barksdale deed was for the jury to determine.

"Without paying much attention to the (often finespun) distinction between a general and a particular description of the land conveyed in a deed, our conclusion is that the court erred in holding as a matter of law, and so instructing the jury, that the deed from W. W. Holman, Jr., to Lucius I. Holman, conveyed the entire half league, or any more than an undivided interest of 810 acres."

To us it appears, not surmise or suspicion, but a strong inference amounting to a fact, that W. W. Holman knew of and recognized the claims of Aunt Polly Ann Barksdale and her husband to this 1,000 acres. It will not be denied that while W. W. Holman and L. I. Holman were alive and cognizant of the facts, Mrs. Barksdale, their aunt, had this deed recorded, and sold 700 acres to this defendant in error, and 200 acres to Smith, as shown, and not a syllable of contention was made by these nephews against her assertion and recorded claim. To our mind, viewing this record as a whole, the inferences and conclusions from the testimony which was

received by the lower court are conclusive that the court's action was correct, and therefore the assignment is overruled. Underwood v. Security Life Co., 194 S. W. 587; Wininger v. Railroad, 105 Tex. 56, 143 S. W. 1150; Cartwright v. Canode, 106 Tex. 507, 171 S. W. 696; Downs v. Stevenson, 56 Tex. Civ. App. 211, 119 S. W. 317; Cotton v. Cooper, 160 S. W. 601; Kimball v. Houston Oil Co., 100 Tex. 343, 99 S. W. 852; Holman v. Houston Oil Co., 152 S. W. 885; Houston Oil Co. v. Kimball, 114 S. W. 670; Holland v. Nance, 102 Tex. 177, 114 S. W. 348.

The second assignment of error is practically a repetition of the first assignment, and the same is overruled.

The third and fourth assignments will be considered together, as follows:

(a) The court erred in admitting over the objections of defendant the deed from John W. Holman to J. G. Barksdale, said deed containing as its description the following:

"To a certain tract or parcel of land, with the appurtenances thereunto belonging or in any wise appertaining, situate, lying, and being in the county of San Augustine, and containing 1,000 acres. The said land lies between the Ayish bayou, and the River Angelina, in the forks of said stream, in Zavalla's colony, about 10 or 12 miles from the town of Jackson. The said land lies on the west of a half of the league of land obtained from the government by the citizen Nathaniel Hyden from the legal commissioner, as a colonist, which may be seen by reference to the records at Nacogdoches. The field notes of said land is returned with the following kinds of timber: Oak, ash, dogwood, gum, elm, etc., shoemake and myrtle, together with all and singular the hereditaments," etc.

Said deed having been objected to for the reason that the description of same contained a patent ambiguity, in that it attempted to convey 1,000 acres on the west of a half of the league of land obtained from the government by Nathaniel Hyden from the legal commissioner, showing on the face of the deed that it might be either on one half or on the other, if on the league at all, and it does not appear from the description which half the 1,000 acres would be taken from, and because, giving the language its ordinary meaning, it would mean 1,000 acres to the west of the west half of the Nathaniel Hyden league, and not be on the league at all, and therefore would not affect the land in suit, and, further, because it attempts to convey, not an undivided interest of 1,000 acres, but shows plainly on its face that it attempted to convey some tract of 1,000 acres, and does not locate that tract, therefore, for these reasons, said deed was void for want of description, and, further, said deed, being incorrectly recorded, because not properly authenticated, was not admissible as an ancient instrument, and its execution should have been proved, and it was not proved, there being no proof of proper custody, no corroborating circumstances shown, no proof to show even that said deed was 30 years old; it being further requested that, if said objections should be overruled as going

to the total exclusion of the evidence, the court should limit the effect of the evidence as a mere circumstance, if admissible, even that far to establish the existence of the original deed.

(b) The court erred in not rendering judgment for the defendant at the conclusion of the plaintiff's evidence, as requested by defendant. The propositions submitted under these assignments are:

(a) The deed undertakes to convey a 1,000-acre tract bounded on the east by a half of the Hyden league, and same is therefore patently ambiguous, and, for that reason, void, in that it could have either the east or the west half of the league as its east boundary.

(b) The language of said deed means either that the 1,000-acre tract sought to be conveyed is bounded on the east by the west half of the Nathaniel Hyden league, or that it is bounded on the east by the east half of said league, and therefore conveys land not sued for by the plaintiff.

(c) If the language of said deed means that 1,000 acres is to be taken from the west part of the east half of said league, said deed is yet void for want of description, in that it fails to locate the 1,000-acre tract, and the evidence showed that there was no segregated 1,000-acre tract in the league.

(d) The deed through which plaintiff claimed described land bounded on the east either by the east half of the Nathaniel Hyden league, or by the west half thereof, and therefore did not convey the land sued for by him, and he therefore totally failed to show any title.

[2] These assignments attack the sufficiency of the description of the land in the deed from John W. Holman to Barksdale, because it describes it as 1,000 acres being on the west of a half of the league of land, and alleges that such description is a patent ambiguity, and renders said deed void.

Defendant in error submits the counter proposition that this is a good and perfect description of 1,000 acres off the west end of the east half of said Hyden league, as John W. Holman only owned the east half of the league, and nothing else on the Hyden, as shown by the record herein.

The language of the deed is plain that the 1,000 acres is on the west portion of a half of the Hyden league, and J. W. Holman only owned the east half of said league, as shown by the record herein, and hence said 1,000 acres must be on the west portion of the east half of the league.

In Houston Oil Co. v. Kimball, 114 S. W. 670, the court uses the following language:

"There was, so far as the evidence shows, no other land on the west bank of the Neches in that colony, or elsewhere, that Nelson owned or claimed."

In the case of Waterhouse v. Gallup, 178 S. W. 776, the following language is used:

"When a deed or contract is reasonably susceptible of a construction which would make it valid and binding, that construction should be given it rather than one which would render it void."

See Sowers v. Peterson, 59 Tex. 220; Waters v. Spofford, 58 Tex. 122.

[3, 4] The deed to Barksdale conveys 1,000 acres of land off the west end of the east half of the Hyden league. There was no purchaser of this land from or under W. W. Holman's deed to the whole east half until Mrs. Drain, executrix, conveyed to Norsworthy in 1881. The Barksdale deed was recorded in 1874, and every purchaser took his title with constructive notice of said deed and record. Purchasers are only charged by construction with notice of the facts exhibited by the record, and not with such as might have been ascertained by such inquiries as an examination of the record might have induced a prudent man to make, and, while it is a conclusion of law which cannot be disputed that subsequent purchasers and creditors are chargeable with notice of all the facts shown or exhibited by the record, it has never been held that they are bound or affected by a record which does not give notice of a valid conveyance of the property in question, but merely gives information which, if in fact communicated to such creditor or purchaser, might have been reasonably sufficient to put him upon inquiry, though, had such inquiry been made, the existence of a prior incumbrance not properly recorded might have been ascertained. Taylor v. Harrison, 47 Tex. 457, 26 Am. Rep. 304; Laughlin v. Tips, 8 Tex. Civ. App. 649, 28 S. W. 551.

[5] It is also the well-known principle that every purchaser of land is chargeable with all that the real estate records show in the chain of title under which he claims, even all recitations therein.

The record shows that John W. Holman owned the east half of the Hyden league. These purchasers, under the law, were compelled to know what he had done with that land, as shown by the record, and they thus legally knew that he had conveyed 1,000 acres on the west end of same to Barksdale, as it is admitted that he only owned land on the east half of said league.

We have arrived at the conclusion that there was no ambiguity in the deed, and the assignments must be overruled.

The fifth assignment is as follows:

"The court erred in not rendering judgment for the defendant, because, even if said deed to Barksdale and the subsequent deeds in that chain of title were sufficiently authenticated to be properly recorded, yet the description in said deed to Barksdale was so indefinite and misleading as not to convey constructive notice, and not such as to prevent said defendant and its vendors from being innocent purchasers; the evidence having shown conclusively that they paid value, and had no notice of said prior deed to Barksdale."

From what we have said heretofore it is apparent that the court does not consider

that this assignment has merit, and therefore it is overruled.

The sixth assignment is as follows:

"The court erred in refusing to sustain the objection of defendant to the introduction by plaintiff of the receipt signed by J. C. Aiken, dated February 18, 1859, said receipt reading: 'Received of J. G. Barksdale payment in full of all accounts by settlement up to this date, including $41.00 paid Holman at San Augustine, November 1, 1858, as per receipt rendered by Holman, this February 18, 1859.' Which was objected to on the ground that the receipt did not show what land the survey was made on, or what land the taxes were paid on, and was therefore irrelevant and immaterial, and, if construed as stating that it was for the land in controversy, such statement being hearsay, the witness having shown by his testimony that he did not know such facts."

This opinion has reached such length that, without going into detail as to this action of the court with reference to the Aiken receipt, it is our opinion that the receipt was executed more than 50 years ago by Aiken; that the execution and custody of it were fully proven; and that, if any objection could be urged, it would be only to its weight as evidence, and not to its admissibility. Howard v. Russell, 75 Tex. 177, 12 S. W. 525; Wiener v. Zweib, 128 S. W. 704; Arbendaiz v. Stillman, 67 Tex. 458, 3 S. W. 678. The assignment is therefore overruled.

The seventh assignment is as follows:

"The court erred in rendering judgment in favor of defendant for all the land in controversy except whatever might be equitable and just to adjudge to the plaintiff after adjudging to the defendant the title to an undivided 810 acres by reason of the innocent purchase of Lucius I. Holman, if the deed to him be construed as conveying only 810 acres, and after adjudging to defendant the title to the 425-acre tract conveyed by W. W. Holman to Woldert, which tract was subsequently acquired by defendant, because, under the circumstances of this case, in view of the long and steady claim and asserting of ownership by plaintiff and its vendors, and in view of the evidence as to payment of valuable consideration, especially as to the 810-acre tract which was purchased by Lucius I. Holman before the record of the deed from Holman to Barksdale, which recites a valuable consideration, and which, in consideration with the other circumstances, was sufficient to prove the payment of the valuable consideration, and to require the finding that such purchase was made without notice of the adverse claim of title, and the circumstances are also sufficient to require the finding that the prior vendors in defendant's chain of title, who are now dead, purchased the 425-acre tract without notice of the adverse claim, and to show that the same was purchased for a valuable consideration, and the evidence of plaintiff was insufficient to show that any part of the 700 acres adjudged to him or of the 1,000-acre tract out of which it was adjudged would remain unappropriated after the allotment to defendant of the undivided 810 acres by virtue of the innocent purchase of Lucius I. Holman, and after the allotment to it of the 425-acre tract, and the judgment, if it should have been in plaintiff's favor to any extent, should have only adjudged him the right to the 700 acres described in his deed, if in the allotment to defendant of the 810 acres undivided interest and the 425 acres specific interest did not appropriate the said land adjudged to the plaintiff."

As heretofore stated, the length of this opinion has assumed such proportions that we do not deem it advisable to go into this matter at length. It seems from the testimony in the case that Lane's 700 acres in no way interferes with the 810 acres through L. I. Holman, or the 425 acres through Woldert, and the description in each of the deeds shows there is no conflict. Therefore the assignments are overruled.

We believe that the trial of the case in the lower court was correctly had; that plaintiff in error's rights were guarded in every respect; that the deed to Barksdale is sufficient between the parties to it and their privies to convey the land which the court in this case construed it to convey; that it was sufficiently authenticated for record; that its description is sufficient; and that from this record the cause should be in all things affirmed.

It is so ordered.